**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Luz Del Carmen Salama-Tobar
5315 Brinkley Road
Temple Hills, MD 20748

Daphne Bolotas
455 S. Maple Ave
Apt. 219
Falls Church, VA 22046

Electra Bolotas
6645 Georgia Ave, NW
Washington, DC 20012

Plaintiffs,

v.

District of Columbia
c/o Office of the Attorney General
406 6th Street, NW
Washington, DC 20001

Peter Newsham
5036 Davis Ford Road
Woodbridge, VA 22192

John Does 1-50 ,
in their official and individual capacities,

and

John Does 51-100,
in their official and individual capacities,

Defendants.

Case No.

## COMPLAINT

## INTRODUCTION

1. On May 25, 2020, George Floyd, an unarmed African American man, was killed while in police custody. Mr. Floyd had been arrested for allegedly using a counterfeit twenty-dollar bill at grocery store. A police officer pressed his knee into the back of Mr. Floyd's neck for eight minutes and forty-six seconds. A bystander recorded the killing on video.

2. In the wake of Mr. Floyd's killing, Americans from across the country exercised their constitutional right of freedom of speech and assembly and took to the streets to protest Mr. Floyd's death. In Washington D.C., protestors gathered throughout the city to protest Mr. Floyd's death, at the time the latest high profile killing of an unarmed African American male at the hands of law enforcement in recent years. Lafayette Square, a public park located directly north of the White House, was a major gathering place for protestors in Washington in the days after Mr. Floyd's death. The Metropolitan Police Department ("MPD") and other federal law enforcement agencies were deployed throughout the District and in and around Lafayette Square in response to the street protests.

3. On May 30, 2020, at approximately 9:30 p.m., federal agents from the United States Park Police, Military Police, and other federal agents were positioned in and around Lafayette Square. Demonstrators were gathered in the area to protest Mr. Floyd's killing. In spite of the largely peaceful protest, the federal agents fired rubber bullets, tear gas and other unknown chemical irritants into the crowd. MPD formed a perimeter around the area, blocking surrounding streets so as to force protestors into a constricted area ("a kettle") from which they

could not leave. Everyone in the area was subjected to the non-lethal force deployed by MPD. Protestors and people injured were locked in the area and not allowed to leave.

4. Plaintiffs Daphne Bolotas and Electra Bolotas are sisters. Plaintiff Luz Del Carmen Salama-Tobar is a close friend of Daphne and Electra. Plaintiffs are ordinary citizens—one working as an independent photojournalist, another a preschool teacher, and the third a high school teacher. Plaintiffs came to the District of Columbia on May 30, 2020 to protest racial injustice and the death of George Floyd. Each of them suffered one or more of the constitutional, statutory, and common law violations described here. Each suffered severe physical and emotional injuries on May 30, 2020 directly related to the constitutional violations they endured.

5. Plaintiff Salama-Tobar did not participate in any acts of vandalism or other unlawful acts. Her attendance at the demonstration on May 30, 2020 was primarily as an observer, taking photos of the events unfolding around her. Plaintiffs Daphne and Electra Bolotas did not participate in any acts of vandalism or other unlawful acts. Shortly after their arrival in Lafayette Square, individuals that Plaintiffs believe were federal law enforcement officers fired rubber bullets and tear gas into the crowd without justification and without warning.

6. John Doe 2, an individual we believe to be a United States Park Police Officer, approached Plaintiff Electra Bolotas and struck her on the head with his baton without justification or warning. The same officer targeted Plaintiff Daphne Bolotas and pushed her to the ground without legal justification. John Doe 1, a person we believe to be a federal law enforcement officer, fired a rubber bullet that struck Plaintiff Salama-Tobar in the eye as she was preparing to take pictures of the events. John Does 3-50, individuals we believe to be federal

law enforcement officers, fired tear gas canisters, rubber bullets, and other non-lethal projectiles that struck both Daphne and Electra Bolotas, as they lay on the ground immediately after being injured.

7. Plaintiffs were detained by John Does 51-100, members of the MPD. Plaintiffs were kettled for approximately two hours by John Does 51-100 and the MPD, preventing them from seeking medical aid for their injuries. Plaintiff Salama-Tobar was blinded and in excruciating pain from the rubber bullet still lodged in her eye. Plaintiff Daphne Bolotas' arm was in extreme pain and broken. Plaintiff Electra Bolotas was disoriented and suffering from a head injury. Despite their obvious and serious injuries, Plaintiffs were detained by MPD officers and kept in a kettle for approximately two hours. Their desperate pleas to leave in order to seek medical attention were ignored.

8. As a direct result of the constitutional violations by Defendants, Plaintiffs are entitled to obtain compensation for the injures they sustained. Plaintiffs seek compensatory and punitive damages for Defendants' egregious and illegal conduct.

## PARTIES AND RELEVANT INDIVIDUALS

9. Plaintiff Luz Del Carmen Salama-Tobar is a professional photographer and Fulbright Scholar from Temple Hills, Maryland. Ms. Salama-Tobar was blinded in her left eye as a result of being shot in the eye with a rubber bullet on May 30, 2020 by John Doe 1. She may never fully regain her vision.

10. Plaintiff Daphne Bolotas is a preschool teacher from Falls Church, Virginia. Ms. Bolotas' wrist was broken when she was forcefully pushed to the ground by John Doe 2 on May 30, 2020.

11. Plaintiff Electra Bolota is a high school teacher from Washington D.C. Ms. Bolotas suffered a head injury when she was struck on the head with a baton by John Doe 2 on May 30, 2020.

12. Defendant District of Columbia, a municipal corporation, is the local government of Washington D.C. It operates and governs the MPD pursuant to the laws of the District of Columbia. In this case, the District of Columbia acted through its agents, employees, and servants.

13. At all relevant times, Defendant Peter Newsham was the Chief of Police for the MPD. He is sued in his official capacity. In that capacity, he is responsible for the actions of the Metropolitan Police officers.

14. At all relevant times William P. Barr was the Attorney General of the United States. He personally ordered the deployment of federal agents from various federal agencies in and around Lafayette Square on or about May 30, 2020.

15. At all relevant times Mark Esper was the Secretary of Defense for the United States. In that capacity, he was responsible for the actions of the United States armed forces, including United States Military Police Officers.

16. At all relevant times Gregory T. Monahan was the Acting Chief of the United States Park Police. In that capacity, he was responsible for the actions of the United States Park Police Officers.

17. At all relevant times James M. Murray was the Director of the Secret Service. In that capacity, he was responsible for the actions of Secret Service agents.

18. At all relevant times General James C. McConville was the Chief of Staff of the United States Army. In that capacity, he was responsible for the actions of the United States Army troops, including United States Military Police officers.

19. At all relevant times Michael Carvajal was the Director of the Federal Bureau of Prisons. In that capacity, he was responsible for the actions of Federal Bureau of Prisons officers.

20. At all relevant times Donald Washington was the Director of the United States Marshals Service. In that capacity, he was responsible for the actions of United States Marshals officers.

21. Defendants John Does 1-50 are officers of the United States Park Police, agents of the United States Secret Service, members of the United States Armed Forces, agents of the Federal Bureau of Prisons, and officers of other federal law enforcement agencies or other federal government officials who authorized, planned or participated in the attack on protestors in and near Lafayette Square on May 30, 2020. They are sued in their official and individual capacities.

22. Defendants John Does 51-100 are MPD officers, agents of the District of Columbia, who authorized, planned, or participated in the kettle, and/or unconstitutional detention of Plaintiffs May 30, 2020.

**JURISDICTION AND VENUE**

23. The Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because Plaintiffs' claims arise under the United States Constitution and are asserted here pursuant to 42 U.S.C. § 1983. Plaintiffs' claims under the statutory and common law of the

District of Columbia arise from the same events as the constitutional claims and are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

24. Venue is proper in this District under 28 U.S.C. §1391(e)(1) because all of the events giving rise to the claims took place in the District of Columbia.

## BACKGROUND

25. On May 25, 2020, George Floyd was killed by a former Minneapolis Police Officer. Three other former Minneapolis police officers idly stood by and watched Mr. Floyd beg for his life, lose consciousness, and die in their presence.

26. Mr. Floyd's death – videorecorded by an eyewitness – ignited protests in the United States and around the world after going viral. In Washington D.C., Lafayette Square, a public park located in close proximity to the front of the gates of the White House, became a focal point for protest activity in the days after the George Floyd murder. Officers from numerous federal and local law enforcement agencies were stationed in and around Lafayette Square during the protests, including the Secret Service, United States Park Police, United States Marshal Service, Bureau of Prisons, Military Police, and MPD.

27. The deaths of Terrence Sterling, Marqueese Alston, Trayvon Martin, Eric Garner, Jean Botham, Michael Brown, Laquan McDonald, Tamir Rice, Walter Scott, Samuel Dubose, Freddie Gray, Philando Castile, Alton Sterling, Rayshard Brooks, Ahmaud Arbery, and Breonna Taylor to name a few, in the months and years before the summer of 2020, laid the groundwork for the street protests that occurred throughout the United States after George Floyd's murder.

28. On May 30, 2020, Plaintiffs exercised their constitutional rights to free speech and assembly and decided to join other persons near Lafayette Square protesting racial injustice and the death of George Floyd.

***Luz Del Carmen Salama-Tobar, Daphne and Electra Bolotas Attend the Protest***

29. On the evening of May 30, 2020, at approximately 9:00 p.m., Plaintiffs drove to the District of Columbia. They walked from their car to an area near St. John's Episcopal Church at 1525 H St. NW in Washington D.C. With the church to their backs, the women stood on H St. NW, facing Lafayette Square, where a group of federal officers, most dressed in riot gear, were standing in Lafayette Square behind a row of chain linked metal columns.

30. The majority of the officers were dressed in either light blue uniforms, green military style fatigues or in all black tactical clothing. Many of the officers carried clear shields with either the words "Police", "Military Police" or "US Park Police" written across the front.

31. Ms. Salama-Tobar, equipped with a professional grade camera, was taking pictures while Daphne and Electra Bolotas participated in the protest with approximately twenty other persons who were in their immediate vicinity.

32. The majority of protestors, including Plaintiffs, were standing on H Street N.W., separated from the police officers in Lafayette Square by an elevated sidewalk and the chain linked metal pillars.

33. Plaintiffs were never given a directive to disperse.

***The Police Assault on the Lafayette Square Protestors***

34. Shortly after their arrival, without warning or provocation, law enforcement officers fired tear gas and rubber bullets into the crowd of protestors. Almost simultaneously, John Doe 2, an officer carrying a shield with the word "Police", stepped over a chain link and walked out into the street. John Doe 2 walked toward Electra Bolotas and violently struck her on the head with his baton, before turning his attention to Daphne Bolotas and forcefully pushing her to the ground.

35. Electra Bolotas grabbed her head and collapsed to the ground. While on the ground, she felt a tear gas cannister or similar non-lethal projectile hit the side of her body.

36. Daphne Bolotas was unable to break her fall and landed directly on her wrist. While lying on the ground, she was struck in the shoulder with a tear gas cannister.

37. At the same time, Ms. Salama-Tobar was taking pictures of the protest in a stationary position on H St. N.W. John Doe 1 fired a rubber bullet that hit Ms. Salama-Tobar in the eye. She grasped her eye and fell to the ground as the blood from her eye gushed down her face.

38. The tear gas canisters and rubber bullets fired by John Doe 1 and John Does 3-50 that struck Plaintiffs were fired recklessly and without proper regard.

39. John Doe 1 intentionally shot Plaintiff Salama-Tobar with a rubber bullet. John Doe 2 intentionally struck Plaintiffs Daphne and Electra Bolotas. John Doe 3 -50 intentionally fired rubber bullets and tear gas that struck Plaintiffs.

***The Aftermath***

40. A nearby medic, M.J., witnessed the injury to Ms. Salma-Tobar. M.J. directed her to a makeshift clinic that had been established in the front of St. John's Church. M.J. called for an ambulance and applied ointment and pressure to Ms. Salama-Tobar's eye in an attempt to stop the bleeding.

41. M.J. accompanied Ms. Salama-Tobar as the two walked northbound on 16th St. N.W. to try and find an ambulance.

42. Daphne Bolotas was helped off the ground by a fellow protestor and walked to St. John's Church. A medic at the church helped put her arm in a sling.

43. Electra Bolotas, disoriented from the blow to her head, was briefly separated from the group of young women.

44. The women reunited on 16th St. NW, approximately one block from where they were injured, and waited for an ambulance to arrive to transport them to the hospital.

45. All of the women were in pain from their respective injuries. The chemical irritants used by the federal officers caused Plaintiffs varying levels of discomfort, including, but not limited to, difficulty breathing and a burning sensation in their eyes and throat.

***The Kettle***

46. The Metropolitan Police Department established a police line on 16th St. NW, which blocked all alternate routes of egress on surrounding streets, such as H St. NW, I St. NW and K St. NW.

47. At the intersection of 16th and K St. NW, MPD also formed a police line across K St. NW, prohibiting all northbound traffic from 16th St. NW advancing beyond that point.

48. The effect of the intersecting police lines across 16th St. NW and K St. NW was that the protesters, including the Plaintiffs, were encircled or substantially encircled by police lines (known as a "kettle").

49. Plaintiffs were unconstitutionally detained in the police kettle on 16th St. NW and were prevented from seeking immediate medical attention for their acute and serious injuries.

50. The ambulance could not reach their location due to the police blockade of 16th St. NW and the surrounding streets.

51. At the intersection of 16th and K St. NW, Plaintiffs were denied permission from the MPD officers to leave the kettle in order to seek medical attention.

52. The pain from each of Plaintiffs' respective injuries, particularly Ms. Salama-Tobar's eye injury, worsened during the prolonged wait in the MPD kettle.

53. MPD allowed Ms. Salama-Tobar and the medic to leave the kettle approximately 90 minutes after she first requested permission.

54. The line of MPD officers on K. St. NW advanced southbound on 16th St. NW, pushing all persons on 16th St. NW, including Daphne and Electra Bolotas, still unconstitutionally detained in the kettle, back in the direction of Lafayette Square.

55. Daphne and Electra Bolotas continued to request permission from MPD officers to leave the kettle in order to seek medical attention.

56. MPD officers eventually allowed Daphne and Electra Bolotas to leave the kettle after they had been unconstitutionally detained for nearly two hours.

57. Plaintiffs were detained in the kettle without probable cause, simply because each was exercising their constitutional right to document and participate in the protest near Lafayette Square.

***Ms. Salama-Tobar's Medical Condition***

58. The rubber bullet that struck Ms. Salama-Tobar's left eye was removed by medical personnel at the hospital early the next morning. Doctors informed Ms. Salama-Tobar that she may never fully regain her vision as a result of the injury.

59. Below is an image of Ms. Salama-Tobar's eye shortly after she was shot in the eye.



60. Since leaving the hospital, Ms. Salama-Tobar has not regained vision in her eye. She has suffered from severe migraine headaches.

61. The rubber bullet caused a macular hole and choroidal rupture in Ms. Salma-Tobar's left eye and lacerated her left eyelid. Ms. Salma-Tobar cannot see out of her left eye. It is likely that she will never fully regain vision in her left eye.

***Ms. Salama-Tobar's Future***

62. Ms. Salama-Tobar's life has been completely upended. Prior to being injured, Ms. Salama-Tobar was studying and working in El Salvador on a Fulbright Scholarship for photography. She has been unable to work in her chosen field of photography because half of her field of vison is now gone. Ms. Salama-Tobar fears that she will no longer be able to effectively function as a professional photographer.

63. Ms. Salama-Tobar has participated in therapy to help her cope with her new reality and the emotional trauma she experienced when she attended the protest.

64. Ms. Salama-Tobar continues to suffer from feelings of depression and anxiety due to being injured at the protest.

65. Ms. Salama-Tobar's eye injury will have a long-term effect on her dependents. Ms. Salama-Tobar lost her mother to COVID-19 in the Spring of 2020. After her mother's death, she became the primary financial support system for her younger sibling, who also may need therapy to cope with her sister's injury.

***Daphne Bolotas Medical Condition***

66. Daphne Bolotas' wrist was broken when she was thrown to the ground by John Doe 2. On June 10, 2020. She had surgery to repair a Colles' fracture in her left wrist.

67. Her road to recovery has been difficult. Ms. Bolotas' wrist remains swollen, is numb on occasion, and she has not regained full range of motion in the wrist.

68. Daphne Bolotas has participated in therapy to help her cope with the emotional trauma and suffering she has experienced since attending the protest.

69. Below is a picture of the shirt Ms. Bolotas was wearing during the protest, after being marked with a tear gas cannister or similar projectile.



***Daphne Bolotas' Future***

70. Daphne Bolotas continues to suffer from feelings of depression and anxiety due to being injured at the protest.

71. Being assaulted by a police officer has deeply traumatized Daphne Bolotas. Ms. Bolotas is concerned that she will be subjected to further violence by law enforcement if she exercises her constitutional rights in the future.

***Electra Bolotas' Medical Condition***

72. Electra Bolotas was diagnosed with a concussion after being hit with John Doe 2's baton.

73. In the days after the assault, Ms. Bolotas suffered from severe migraine headaches.

74. Electra Bolotas has participated in therapy to help her cope with the emotional trauma she has experienced since attending the protest.

75. Below is a picture of Electra Bolotas' head injury, where she was struck by John Doe 2 with a baton.



***Electra Bolotas' Future***

76. Electra Bolotas continues to suffer from feelings of depression and anxiety due to her experience at the protest on May 30, 2020.

77. Being assaulted by John Doe 2 and John Does 3-50 has deeply traumatized Electra Bolotas. Ms. Bolotas is concerned that she will be subjected to further violence by law enforcement if she exercises her constitutional rights in the future.

***Notice of Claims***

78. Plaintiffs have timely given notice in writing to the Mayor of the District of Columbia of the "approximate time, place cause and circumstances" of their injuries, pursuant to D.C. Code §12-309. The Notice of Claim letter for Daphne Bolotas was mailed via certified mail to the D.C. Office of Risk Management on October 15, 2020. The Notice of Claim Letter(s) for Electra Bolotas and Luz Del Carmen Salama-Tobar was mailed via certified mail on October 16, 2020. On October 26, 2020, the District acknowledged receipt of each letter and denied each of the three claims.

## CLAIMS FOR RELIEF

### Count 1: Violation of Fourth Amendment/*Bivens*

### (Plaintiff Luz Del Carmen Salama-Tobar v. John Doe 1)

79. The actions of John Doe 1 violated Plaintiff Salma-Tobar's rights under the Fourth Amendment to the United States Constitution. John Doe 1's use of excessive physical force, including shooting a projectile that struck Plaintiff Salma-Tobar's eye causing severe physical and emotional harm, was done without a warrant or probable cause.

80. Defendant John Doe 1 is liable to Plaintiff Salma-Tobar for his actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for his violation of her constitutional rights and the resulting harm.

81. Defendant John Doe 1 is liable for punitive damages. He acted with reckless or callous indifference to the federally protected rights of Plaintiff Salma-Tobar.

**Count 2: Violation of Fourth Amendment/*Bivens***

**(Plaintiff Daphne Bolotas v. John Doe 2)**

82. The actions of John Doe 2 violated Plaintiff Daphne Bolotas' rights under the Fourth Amendment to the United States Constitution. John Doe 2's use of excessive physical force, including striking her and pushing her to the ground causing severe physical and emotional harm, was done without a warrant or probable cause.

83. Defendant John Doe 2 is liable to Plaintiff Daphne Bolotas for his actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for his violation of her constitutional rights and the resulting harm.

84. Defendant John Doe 2 is liable for punitive damages. He acted with reckless or callous indifference to the federally protected rights of Plaintiff Daphne Bolotas.

**Count 3: Violation of Fourth Amendment/*Bivens***

**(Plaintiff Electra Bolotas v. John Doe 2)**

85. The actions of John Doe 2 violated Plaintiff Electra Bolotas' rights under the Fourth Amendment to the United States Constitution. John Doe 2's use of excessive physical force, including striking her in the head with a baton, causing severe physical and emotional harm, was done without a warrant or probable cause.

86. Defendant John Doe 2 is liable to Plaintiff Electra Bolotas for his actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for his violation of her constitutional rights and the resulting harm.

87. Defendant John Doe 2 is liable for punitive damages. He acted with reckless or callous indifference to the federally protected rights of Plaintiff Electra Bolotas.

**Count 4: Violation of Fourth Amendment/42 U.S.C. § 1983**

**(Plaintiffs v. John Does 51-100, District of Columbia, and Peter Newsham)**

88. The actions of Defendants John Does 51-100, namely the arrest and detention of Plaintiffs inside the kettle, without a warrant or probable cause, violated the rights of Plaintiffs under the Fourth Amendment to the United States Constitution.

89. Defendants John Does 3-50 are liable to Plaintiffs pursuant to 42 U.S.C. § 1983 for the violations of Plaintiffs' constitutional rights and the resulting harm.

90. Defendants John Does 3-50 are liable for punitive damages. They acted with reckless or callous indifference to the federally protected rights of Plaintiffs.

91. Defendants District of Columbia and Newsham are liable pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' constitutional rights because these violations were caused by a policy, practice, or custom of the District of Columbia.

**Count 5: Negligence Per Se/First Amendment Assemblies Act (Kettling)**

**(Plaintiffs v. John Does 51-00, District of Columbia, and Peter Newsham)**

92. The actions of Defendants John Does 51-100, the District of Columbia, and Defendant Newsham, namely ordering the kettling and unconstitutionally detaining Plaintiffs therein, violated the rights of Plaintiffs under the First Amendment Assemblies Act (D.C. Code § 5:331.01, *et seq.*).

93. Defendants John Does 51-100, the District of Columbia, and Defendant Newsham did not have probable cause to believe that a significant number or percentage of the persons located in the area or zone had committed unlawful acts. Even if such probable cause existed, the Defendants either did not have the ability to identify the persons who had committed unlawful acts, or had not decided to arrest such persons, or both.

94. Plaintiffs did not commit any unlawful acts before or during their detention in the kettle, nor has it ever been alleged that they did so.

95. These Defendants did not use the police lines to encircle the protest for the safety of the protesters. There was no threat to the protesters' safety coming from outside the kettle.

96. Defendants John Does 51-100, the District of Columbia, and Newsham are jointly and severally liable to Plaintiffs for the violation of their rights, because Defendants' violation of the First Amendment Assemblies Act constitutes negligence per se and/or is redressable under the First Amendment Assemblies Act.

97. Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the damages inflicted by John Does 51-100, which were its agents while acting within the scope of their employment as MPD officers and on behalf of and in the interests of their employer.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that this Court:

(a) RULE that Defendants' actions violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution, the First Amendment Assemblies Act, and the law of the District of Columbia;

(b) ENTER JUDGMENT awarding Plaintiffs compensatory damages against all Defendants in an amount appropriate to the evidence adduced at trial;

(c) ENTER JUDGMENT awarding Plaintiffs punitive damages against all individual Defendants in an amount appropriate to the evidence adduced at trial;

(d) ENTER JUDGMENT awarding Plaintiffs their costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. §1988(b); and

(e) GRANT Plaintiffs such further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Alfred Guillaume III*
Alfred Guillaume III (D.C. Bar No. MD0085)
Law Offices of Alfred Guillaume III, LLC
6305 Ivy Ln. Ste. 700
Greenbelt, MD 20770
Tel. 301-377-2158
Fax. 301-812-4254
ag3law@gmail.com

*/s/ Barry Coburn*
Barry Coburn (D.C. Bar No. 358020)
Marc Eisenstein (D.C. Bar No. 1007208)
Coburn and Greenbaum, PLLC
1710 Rhode Island Ave. NW
Washington D.C. 20036
Tel. 202-657-4490
Fax. 866-561-9712
barry@coburngreenbaum.com
marc@coburngreenbaum.com

*/s/ Nicholas G. Madiou*
Nicholas G. Madiou
(D.C. Bar No. MD0039)
Brennan, McKenna, Lawlor, Chtd.
6305 Ivy Ln. Ste. 700
Greenbelt, MD 20770
Tel. 301-474-0044
Fax. 301-474-5730
nmadiou@brennanmckenna.com