# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Luz Del Carmen Salama-Tobar
5315 Brinkley Road
Temple Hills, MD 20748

Daphne Bolotas
455 S. Maple Ave
Apt. 219
Falls Church, VA 22046

Electra Bolotas
6645 Georgia Ave, NW
Washington, DC 20012

                            Plaintiffs,

v.                                        Case No. 1:21-cv-00500-CJN

Officer Sheldon Thorpe
in his official and individual capacity,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Detective Wayne Humberson,
in his official and individual capacity,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Officer Jared Tyng,
in his official and individual capacity,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Officer Daniel Glendenning,
in his official and individual capacity,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Officer Pedro Rancier,
in his official and individual capacity,
United States Park Police

1

1100 Ohio Drive SW
Washington, DC 20024

Officer Andrew Lauro,
in his official and individual capacity,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Chief Jeffrey Carroll
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Commander Robert Glover
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Lieutenant Andrew Horos
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Lieutenant Jason Bagshaw
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059
Washington, DC 20001

Sergeant Daniel Thau
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Sergeant Anthony Alioto
in his official and individual capacity,

Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Officer Gregory Rock
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Officer James Crisman
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Officer Nicholas Imbrenda
in his official and individual capacity,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

John Does 1 to 100, as described in the
initial version of this Complaint;

District of Columbia
c/o Office of the Attorney General
406 6th Street, N.W.
Washington, DC  20001

Metropolitan Police Department
District of Columbia
300 Indiana Avenue, N.W.
Washington, DC  20001

United States Park Police
United States Department of the Interior
National Park Service
1100 Ohio Drive, S.W.
Washington, DC  20242,

                              Defendants.

<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Plaintiffs Daphne Bolotas, Electra Bolotas, and Luz Del Carmen Salama-Tobar hereby bring their First Amended Complaint against Defendants Peter Newsham,  United States Park Police ("USPP") Officer Sheldon Thorpe, USPP Detective Wayne Humberson,  USPP Officer Jared Tyng, USPP Officer Daniel Glendenning, USPP Officer Pedro Rancier, USPP Officer Andrew Lauro, District of Columbia Metropolitan Police Department ("MPD") Chief Jeffrey Carroll, MPD Commander Robert Glover, MPD Lieutenant Andrew Horos, MPD Lieutenant Jason Bagshaw, MPD Sergeant Daniel Thau, MPD Sergeant Anthony Alioto, MPD Officer Gregory Rock, MPD Officer James Crisman, MPD Officer Nicholas Imbrenda, the District of Columbia, the District of Columbia Metropolitan Police Department, the United States of America, the United States Park Police, the United States National Park Service, and the United States Department of the Interior.

1.      On May 25, 2020, George Floyd, an unarmed African American man, was killed while in police custody.  Mr. Floyd had been arrested for allegedly using a counterfeit twenty-dollar bill at grocery store.  A police officer pressed his knee into the back of Mr. Floyd's neck, and his back, for at least eight minutes and forty-six seconds.  A bystander recorded the killing on her mobile telephone.

2.      In the wake of Mr. Floyd's killing, Americans from across the country exercised their constitutional rights of freedom of speech and assembly and took to the streets to peacefully protest Mr. Floyd's death.  In Washington D.C., protestors gathered throughout the city to protest Mr. Floyd's death.  Lafayette Square, a public park located directly north of the White House, was a major gathering place for protestors in Washington in the days after Mr. Floyd's death.

The Metropolitan Police Department ("MPD") and other federal law enforcement agencies were deployed throughout the District of Columbia, including in and around Lafayette Square, in response to the street protests.

3.      On May 30, 2020, at approximately 9:30 p.m., federal agents from the United States Park Police, Military Police, and other federal agents were positioned in and around Lafayette Square.  Demonstrators were gathered in the area to protest Mr. Floyd's killing. In spite of the largely peaceful protest, the federal agents fired rubber bullets, tear gas and other less-lethal projectiles and chemical irritants into the crowd.  MPD formed a perimeter around the area, blocking surrounding streets so as to force protestors into a constricted area ("a kettle") from which they could not leave.  Protestors, including people injured, were locked into the area by the Defendants and not allowed to leave.  The individual law enforcement officers named as defendants in this action participated directly in this conduct.

4.      Plaintiffs Daphne Bolotas and Electra Bolotas are sisters. Plaintiff Luz Del Carmen Salama-Tobar is a close friend of both Daphne and Electra.  Plaintiffs are ordinary citizens— one working as an independent photojournalist, another a preschool teacher, and the third a high school teacher.  Plaintiffs came to the District of Columbia on May 30, 2020, to protest racial injustice and the death of George Floyd.  Each of them suffered one or more of the constitutional, statutory, and common law violations described here.  Each suffered severe physical and emotional injuries on May 30, 2020 directly related to and proximately caused by the constitutional violations that were inflicted upon them.

5.      Plaintiff Salama-Tobar did not participate in any acts of vandalism or other unlawful acts.  Her attendance at the demonstration on May 30, 2020 was primarily as an observer, taking photos of the events unfolding around her.  Plaintiffs Daphne and Electra

Bolotas did not participate in any acts of vandalism or other unlawful acts.  Shortly after their arrival in and around Lafayette Square, federal law enforcement officers, including those named as individual defendants in this action, fired less-lethal projectiles and tear gas into the crowd without justification and without warning.

6.     United States Park Police Officer Sheldon Thorpe approached Plaintiff Electra Bolotas and struck her on the head with his baton without justification or warning.  Officer Thorpe next targeted Plaintiff Daphne Bolotas, pushing her to the ground without legal justification.  At least one of the United States Park Police officers named as individual defendants in this action fired one or more rubber bullets and similar less-lethal projectiles that struck Plaintiff Salama-Tobar in the eye as she was preparing to take pictures of the events. These same officers, along with John Does 1-50, individuals we believe to be federal law enforcement officers, fired tear gas canisters, rubber bullets, and other less-lethal projectiles that struck both Daphne and Electra Bolotas, as they lay on the ground immediately after being injured.

7.     The six USPP officers named as individual defendants in this action have been identified to Plaintiffs as law enforcement officers who discharged weapons in or around the location, and during the time period, at issue in this case.  Counsel for the United States has proffered to us that none of these individuals admits firing the projectile that injured Ms. Salama-Tobar.  We are uncertain at this time which of these individuals fired the shot that caused her injury, and, further, are uncertain about the precise nature of the projectile fired at her.  Further, it is our understanding that a three-year statute of limitations will apply to the claims asserted in this case.  However, given the risk that a one-year limitations period might be deemed applicable, we submit this amended complaint now.  In it, we assert that each of these USPP

officers fired the projectile in question, given that we know that each of them fired a projectile in or around the relevant location during the relevant time period.  It is our intention, during discovery, to answer definitively the questions of who fired the projectile in question, and the nature of the projectile.  Once that occurs, we will seek the Court's leave to amend the complaint to make this clear.

8.      The Plaintiffs were detained and kettled for approximately two hours by, *inter alia,* Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and John Does 51-100, all members of the MPD, preventing Plaintiffs from seeking medical aid for their injuries.  Plaintiff Salama-Tobar was blinded and in excruciating pain from the projectile still lodged in her eye.  Plaintiff Daphne Bolotas' arm was in extreme pain and broken.  Plaintiff Electra Bolotas was disoriented and suffering from a head injury.  Despite their obvious and serious injuries, Plaintiffs were detained by MPD officers and kept in a kettle for approximately two hours.  Their desperate pleas to leave in order to seek medical attention were ignored.

9.      As a direct result of the above-described constitutional violations by Defendants, Plaintiffs should be awarded appropriate compensation for the injures they sustained. Plaintiffs seek compensatory and punitive damages for Defendants' egregious and illegal conduct.

## PARTIES AND RELEVANT INDIVIDUALS

10.     Plaintiff Luz Del Carmen Salama-Tobar is a professional photographer and Fulbright Scholar from Temple Hills, Maryland. Ms. Salama-Tobar was blinded in her left eye as a result of being shot in the eye with a less-lethal projectile on May 30, 2020.  She may never fully regain her vision.

11.     Plaintiff Daphne Bolotas is a preschool teacher from Falls Church, Virginia.  Ms. Bolotas' wrist was broken when she was forcefully pushed to the ground by USPP Officer Sheldon Thorpe on May 30, 2020.

12.     Plaintiff Electra Bolota is a high school teacher from Washington D.C. Ms. Bolotas suffered a head injury when she was struck on the head with a baton by USPP Officer Sheldon Thrope on May 30, 2020.

13.     Defendant District of Columbia, a municipal corporation, is the local government of Washington D.C. It operates and governs the MPD pursuant to the laws of the District of Columbia. In this case, the District of Columbia and the MPD acted through their agents, employees, and servants.  Both the District of Columbia and the MPD are named as defendants in this action.

14.     At all relevant times, Defendant Peter Newsham was the Chief of Police for the MPD. He is sued in his official capacity. In that capacity, he is responsible for the actions of the Metropolitan Police officers.

15.     At all relevant times William P. Barr was the Attorney General of the United States.  He personally ordered the deployment of federal agents from various federal agencies in and around Lafayette Square on or about May 30, 2020.

16.     At all relevant times Mark Esper was the Secretary of Defense for the United States.   In that capacity, he was responsible for the actions of the United States armed forces, including United States Military Police Officers.

17.     At all relevant times Gregory T. Monahan was the Acting Chief of the United States Park Police.   In that capacity, he was responsible for the actions of the United States Park Police Officers.

18.     At all relevant times James M. Murray was the Director of the Secret Service.  In that capacity, he was responsible for the actions of Secret Service agents.

19.     At all relevant times General James C. McConville was the Chief of Staff of the United States Army.   In that capacity, he was responsible for the actions of the United States Army troops, including United States Military Police officers.

20.     At all relevant times Michael Carvajal was the Director of the Federal Bureau of Prisons.  In that capacity, he was responsible for the actions of Federal Bureau of Prisons officers.

21.     At all relevant times Donald Washington was the Director of the United States Marshals Service.  In that capacity, he was responsible for the actions of United States Marshals officers.

22.     Defendant Sheldon Thorpe is federal law enforcement officer and employed by the United States Park Police.  He is sued in his official and individual capacity.

23.     Defendant Wayne Humberson is federal law enforcement officer and employed by the United States Park Police.  He is sued in his official and individual capacity.

24.     Defendant Jared Tyng is federal law enforcement officer and employed by the United States Park Police.  He is sued in his official and individual capacity.

25.     Defendant Daniel Glendenning is federal law enforcement officer and employed by the United States Park Police.  He is sued in his official and individual capacity.

26.     Defendant Pedro Rancier is federal law enforcement officer and employed by the United States Park Police.  He is sued in his official and individual capacity.

27.     Defendant Andrew Lauro is federal law enforcement officer and employed by the United States Park Police.  He is sued in his official and individual capacity

28.     Defendants John Does 1-50 are officers of the United States Park Police, agents of the United States Secret Service, members of the United States Armed Forces, agents of the Federal Bureau of Prisons, and officers of other federal law enforcement agencies or other federal government officials who authorized, planned or participated in the attack on protestors in and near Lafayette Square on May 30, 2020.

29.     Defendants Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, are law enforcement officers employed by the Metropolitan Police Department (MPD).   They are agents of the District of Columbia, who authorized, planned, or participated in the kettle, and/or unconstitutional detention of Plaintiffs May 30, 2020.

30.     Defendants 51-100 are members of the Metropolitan Police Department, agents of the District of Columbia, who authorized, planned, or participated in the kettle, and/or unconstitutional detention of Plaintiffs on May 30, 2020.

31.     The United States Department of the Interior, the United States National Park Service, and the United States Park Police are agencies and instrumentalities of the United States government.

32.     Each of the persons and entities named in the caption of the First Amended Complaint,  the introductory paragraph of this First Amended Complaint, and/or Paragraphs 13 through 31 above are made Defendants in this action.

## JURISDICTION AND VENUE

33.     The Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because Plaintiffs' claims arise under the United States Constitution and are asserted here

pursuant to 42 U.S.C. § 1983. Plaintiffs' claims under the statutory and common law of the

District of Columbia arise from the same events as the constitutional claims and are within this

Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

34.     Venue is proper in this District under 28 U.S.C. §1391(e)(1) because all of the

events giving rise to the claims took place in the District of Columbia.

35.     Timely notice was provided of these claims to the District of Columbia pursuant

to D.C. Code Section 12-309.  With respect to the Federal Tort Claims Act, SF-95 forms were

sent to the United States Park Police, the Department of the Interior and the National Park

Service on or around October, 2020.  On information and belief, they were received shortly

thereafter, more than six months ago.

### Luz Del Carmen Salama-Tobar, Daphne and Electra Bolotas Attend the Protest

36.     On the evening of May 30, 2020, at approximately 9:00 p.m., Plaintiffs drove to

the District of Columbia.  They walked from their car to an area near St. John's Episcopal

Church at 1525 H St. NW in Washington D.C.  With the church to their backs, the women stood

on H St. NW, facing Lafayette Square, where a group of federal officers, most dressed in riot

gear, were standing in Lafayette Square behind a row of chain linked metal columns.

37.     The majority of the officers were dressed in either light blue uniforms, green

military style fatigues or in all black tactical clothing.  Many of the officers carried clear shields

with either the words "Police", "Military Police" or "US Park Police" written across the front.

38.     Ms. Salama-Tobar, equipped with a professional grade camera, was taking

pictures while Daphne and Electra Bolotas participated in the protest with approximately twenty

other persons who were in their immediate vicinity.

39.     The majority of protestors, including Plaintiffs, were standing on H Street N.W.,

separated from the police officers in Lafayette Square by an elevated sidewalk and the chain linked metal pillars.

40.     Plaintiffs were never given a directive to disperse.

### *The Police Assault on the Lafayette Square Protestors*

41.     Shortly after their arrival, without warning or provocation, law enforcement officers fired tear gas and less-lethal projectiles into the crowd of protestors. Almost simultaneously, Officer Sheldon Thorpe, a United States Park Police officer carrying a shield with the word "Police", stepped over a chain link and walked out into the street. Officer Thorpe walked toward Electra Bolotas and violently struck her on the head with his baton, before turning his attention to Daphne Bolotas and forcefully pushing her to the ground.

42.     Electra Bolotas grabbed her head and collapsed to the ground. While on the ground, she felt a tear gas cannister or similar less-lethal projectile hit the side of her body.

43.     Daphne Bolotas was unable to break her fall and landed directly on her wrist. While lying on the ground, she was struck in the shoulder with a tear gas cannister.

44.     At the same time, Ms. Salama-Tobar was taking pictures of the protest in a stationary position on H St. N.W., in the District of Columbia.  One or more of the USPP officers or officials named as individual defendants in this action, including John Does 1-50, fired one or more rubber bullets or similar less-lethal projectiles that hit Ms. Salama-Tobar in the eye.  She grasped her eye and fell to the ground as blood from her eye ran down her face.

45.     Each of the Plaintiffs also experienced pain and other discomfort as a result of chemicals deployed by the Defendants.

46.     The tear gas canisters and less-lethal projectiles that were fired at and struck Plaintiffs were fired maliciously, knowingly, wrongfully, with intent to injure, recklessly, without legal justification and without proper regard for the safety of the Plaintiffs.

### The Aftermath

47.     A nearby medic, M.J., witnessed the injury to Ms. Salma-Tobar.  M.J. directed her to a makeshift clinic that had been established in the front of St. John's Church.  M.J. called for an ambulance and applied ointment and pressure to Ms. Salama-Tobar's eye in an attempt to stop the bleeding.

48.     M.J. accompanied Ms. Salama-Tobar as the two walked northbound on 16th St. N.W. to try and find an ambulance.

49.     Daphne Bolotas was helped off the ground by a fellow protestor and walked to St. John's Church.  A medic at the church helped to put her arm in a sling.

50.     Electra Bolotas, disoriented from the blow to her head, was briefly separated from the group of young women.

51.     The women reunited on 16th St. NW, approximately one block from where they were injured, and waited for an ambulance to arrive to transport them to the hospital.

52.     All of the women were in pain from their respective injuries. The chemical irritants used by the federal officers caused Plaintiffs varying levels of discomfort, including, but not limited to, difficulty breathing and a burning sensation in their eyes and throat.

### The Kettle

53.     The Metropolitan Police Department established a police line on 16th Street, Northwest, in the District of Columbia, which blocked all alternate routes of egress on surrounding streets, such as H St. NW, I St. NW, and K St. NW.

54.    At the intersection of 16th and K St. NW, MPD also formed a police line across K St. NW, prohibiting all northbound traffic from 16th St. NW advancing beyond that point.

55.    The effect of the intersecting police lines across 16th St. NW and K St. NW was that the protesters, including the Plaintiffs, were encircled or substantially encircled by police lines (known as a "kettle").

56.    Plaintiffs were unconstitutionally detained in the police kettle on 16th St. NW and were prevented from seeking immediate medical attention for their acute and serious injuries.

57.    The ambulance could not reach their location due to the police blockade of 16th St. NW and the surrounding streets.

58.    At the intersection of 16th and K St. NW, Plaintiffs were denied permission from the MPD officers to leave the kettle in order to seek medical attention.

59.    The pain from each of Plaintiffs' respective injuries, particularly Ms. Salama-Tobar's eye injury, worsened during the prolonged wait in the MPD kettle.

60.    MPD allowed Ms. Salama-Tobar and the medic to leave the kettle approximately 90 minutes after she first requested permission.

61.    The line of MPD officers on K. St. NW advanced southbound on 16th St. NW, pushing all persons on 16th St. NW, including Daphne and Electra Bolotas, still unconstitutionally detained in the kettle, back in the direction of Lafayette Square.

62.    Daphne and Electra Bolotas continued to request permission from MPD officers to leave the kettle in order to seek medical attention.

63.    MPD officers eventually allowed Daphne and Electra Bolotas to leave the kettle after they had been unconstitutionally detained for nearly two hours.

64.     Plaintiffs were detained in the kettle without probable cause, simply because each was exercising their constitutional right to document and participate in the protest near Lafayette Square.

### *Ms. Salama-Tobar's Medical Condition*

65.     The projectile that struck Ms. Salama-Tobar's left eye was removed by medical personnel at the hospital early the next morning. Doctors informed Ms. Salama-Tobar that she may never fully regain her vision as a result of the injury.

66.     Below is an image of Ms. Salama-Tobar's eye shortly after she was shot in the eye.



67. Since leaving the hospital, Ms. Salama-Tobar has not regained vision in her eye. She has suffered from severe migraine headaches.

68. The projectile caused a macular hole and choroidal rupture in Ms. Salma-Tobar's left eye and lacerated her left eyelid.  Ms. Salma-Tobar cannot see out of her left eye.  It is likely that she will never fully regain vision in her left eye.

### Ms. Salama-Tobar's Future

69. Ms. Salama-Tobar's life has been upended. Prior to being injured, Ms. Salama-Tobar was studying and working in El Salvador on a Fulbright Scholarship for photography. She has been unable to work in her chosen field of photography because half of her field of vison is now gone. Ms. Salama-Tobar fears that she will no longer be able to effectively function as a professional photographer.

70. Ms. Salama-Tobar has participated in therapy to help her cope with her new reality and the emotional trauma she experienced when she attended the protest.

71. Ms. Salama-Tobar continues to suffer from feelings of depression and anxiety due to being injured at the protest.

72. Ms. Salama-Tobar's eye injury will have a long-term effect on her dependents. Ms. Salama-Tobar lost her mother to COVID-19 in the Spring of 2020.  After her mother's death, she became the primary financial support system for her younger sibling, who also may need therapy to cope with her sister's injury.

### Daphne Bolotas' Medical Condition

73. Daphne Bolotas' wrist was broken when she was thrown to the ground by Officer Sheldon Thorpe. On June 10, 2020.  She had surgery to repair a Colles' fracture in her left wrist.

74.    Her road to recovery has been difficult. Ms. Bolotas' wrist remains swollen, is numb on occasion, and she has not regained full range of motion in the wrist.

75.    Daphne Bolotas has participated in therapy to help her cope with the emotional trauma and suffering she has experienced since attending the protest.

76.    Below is a picture of the shirt Ms. Bolotas was wearing during the protest, after being marked with a tear gas cannister or similar projectile.



***Daphne Bolotas' Future***

77.    Daphne Bolotas continues to suffer from feelings of depression and anxiety due to being injured at the protest.

78.     Being assaulted by a police officer has deeply traumatized Daphne Bolotas. Ms.

Bolotas is concerned that she will be subjected to further violence by law enforcement if she

exercises her constitutional rights in the future.

### *Electra Bolotas' Medical Condition*

79.     Electra Bolotas was diagnosed with a concussion after being hit with Officer

Sheldon Thorpe's baton.

80.     In the days after the assault, Ms. Bolotas suffered from severe migraine

headaches.

81.     Electra Bolotas has participated in therapy to help her cope with the emotional

trauma she has experienced since attending the protest.

82.     Below is a picture of Electra Bolotas' head injury, where she was struck by

Officer Thorpe with a baton.



### *Electra Bolotas' Future*

83.     Electra Bolotas continues to suffer from feelings of depression and anxiety due to her experience at the protest on May 30, 2020.

84.     Being assaulted by Office Thorpe and John Does 1-50 has traumatized Electra Bolotas.  Ms. Bolotas is concerned that she will be subjected to further violence by law enforcement if she exercises her constitutional rights in the future.

### *Notice of Claims*

85.     Plaintiffs have timely given notice in writing to the Mayor of the District of Columbia of the "approximate time, place cause and circumstances" of their injuries, pursuant to D.C. Code §12-309. The Notice of Claim letter for Daphne Bolotas was mailed via certified mail to the D.C. Office of Risk Management on October 15, 2020. The Notice of Claim Letter(s) for Electra Bolotas and Luz Del Carmen Salama-Tobar was mailed via certified mail on October 16, 2020. On October 26, 2020, the District acknowledged receipt of each letter and denied each of the three claims.

### CLAIMS FOR RELIEF

### Count 1: Violation of Fourth Amendment/Bivens

### (Plaintiff Luz Del Carmen Salama-Tobar v. Defendants John Doe 1, John Does 1-50, Detective Wayne Humberson, Officer Jared Tyng, Officer Daniel Glendenning, Officer Pedro Rancier, and/or Officer Andrew Lauro, all individual employees of the USPP named as Defendants)

86.     Paragraphs 1 through 85 of this Complaint are hereby realleged in this and each of the subsequent counts of this First Amended Complaint.

87.     The actions of Defendants John Doe 1-50, Detective Wayne Humberson, Officer Jared Tyng, Officer Daniel Glendenning, Officer Pedro Rancier, Officer Andrew Lauro, and all individual employees of the USPP named as Defendants in this action (the "USPP Individual Defendants") violated Plaintiff Salma-Tobar's rights under the Fourth Amendment to the United

States Constitution.  These Defendants' use of excessive physical force, including shooting a projectile that struck Plaintiff Salma-Tobar's eye causing severe physical and emotional harm, was done without a warrant or probable cause.

88.     Defendants are liable to Plaintiff Salma-Tobar for their actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for their violation of her constitutional rights and the resulting harm.

89.     Defendants are liable for punitive damages. They acted with reckless or callous indifference to the federally protected rights of Plaintiff Salma-Tobar.

**Count 2: Violation of Fourth Amendment/Bivens**

**(Plaintiff Daphne Bolotas v. Defendant Officer Sheldon Thorpe)**

90.     The actions of Officer Sheldon Thorpe violated Plaintiff Daphne Bolotas' rights under the Fourth Amendment to the United States Constitution. Officer Thorpe's use of excessive physical force, including striking her and pushing her to the ground causing severe physical and emotional harm, was done without a warrant or probable cause.

91.     Defendant Officer Thorpe is liable to Plaintiff Daphne Bolotas for his actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for his violation of her constitutional rights and the resulting harm.

92.     Defendant Officer Thorpe is liable for punitive damages. He acted with reckless or callous indifference to the federally protected rights of Plaintiff Daphne Bolotas.

**Count 3: Violation of Fourth Amendment/Bivens**

**(Plaintiff Electra Bolotas v. Defendant Officer Sheldon Thorpe)**

93.     The actions of Officer Sheldon Thorpe violated Plaintiff Electra Bolotas' rights under the Fourth Amendment to the United States Constitution. Officer Sheldon Thorpe's use of

excessive physical force, including striking her in the head with a baton, causing severe physical and emotional harm, was done without a warrant or probable cause.

94.     Defendant Officer Sheldon Thorpe is liable to Plaintiff Electra Bolotas for his actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for his violation of her constitutional rights and the resulting harm.

95.     Defendant Officer Sheldon Thorpe is liable for punitive damages. He acted with reckless or callous indifference to the federally protected rights of Plaintiff Electra Bolotas.

### Count 4: Violation of Fourth Amendment/42 U.S.C. § 1983

**(Plaintiffs v.  Defendant John Does 51-100, Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, District of Columbia, and Peter Newsham)**

96.     The actions of Defendants John Does 51-100, Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and all other District of Columbia Metropolitan Police Department employees named as Defendants in this action, namely the arrest and detention of Plaintiffs inside the kettle, without a warrant or probable cause, violated the rights of Plaintiffs under the Fourth Amendment to the United States Constitution.

97.     These Defendants also are liable pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' constitutional rights because these violations were caused by a policy, practice, or custom of the District of Columbia.

### Count 5: Negligence Per Se/First Amendment Assemblies Act (Kettling)

**(Plaintiffs v. Defendants 51-100, Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant**

Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas
Imbrenda, District of Columbia, and Peter Newsham)

98.     The actions of Defendants John Does 51-100, Chief Jeffrey Carroll, Commander

Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau,

Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas

Imbrenda, the District of Columbia, Defendant Newsham, and all other individual employees of

the MPD named as Defendants in this action, namely ordering the kettling and unconstitutionally

detaining Plaintiffs therein, violated the rights of Plaintiffs under the First Amendment

Assemblies Act (D.C. Code §5:331.01, *et seq*.).

99.     These Defendants did not have probable cause to believe that a significant number

or percentage of the persons located in the area or zone had committed unlawful acts.  Even if

such probable cause existed, the Defendants either did not have the ability to identify the persons

who had committed unlawful acts, or had not decided to arrest such persons, or both.

100.    Plaintiffs did not commit any unlawful acts before or during their detention in the

kettle, nor has it ever been alleged that they did so.

101.    These Defendants did not use the police lines to encircle the protest for the safety

of the protesters. There was no threat to the protesters' safety coming from outside the kettle.

102.    These Defendants (identified in Paragraph 98 above) are jointly and severally

liable to Plaintiffs for the violation of their rights, because Defendants' violation of the First

Amendment Assemblies Act constitutes negligence per se and/or is redressable under the First

Amendment Assemblies Act.

103.    Defendant District of Columbia is liable under the doctrine of respondeat superior

for the damages inflicted by these Defendants who were its agents while acting within the scope

of their employment as MPD officers and on behalf of and in the interests of their employer.

## Count Six:  Federal Tort Claims Act

104.     Pursuant to the Federal Tort Claims Act, 28 U.S.C. Section 1346, Plaintiffs sue the United States, the United States Department of the Interior, the United States National Park Service, and the United States Park Police (the "FTCA Defendants") for the conduct alleged in Paragraphs 1 through 103 above that was undertaken by the USPP Individual Defendants, who were acting within the scope of their employment, rendering the FTCA Defendants liable for their conduct.  The FTCA Defendants violated the Plaintiffs' constitutional rights as detailed above.  In addition, the FTCA Defendants, acting through their agents and employees, committed the torts of negligence and gross negligence, in that their conduct fell well below the applicable standard of care and was reckless.  Further, they committed the torts of assault, assault with a dangerous weapon, malicious wounding, maiming, kidnaping, false arrest, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress, as detailed above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

(a) RULE that Defendants' actions violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution, the First Amendment Assemblies Act, and the law of the District of Columbia;

(b) ENTER JUDGMENT awarding Plaintiffs compensatory damages against all Defendants in an amount appropriate to the evidence adduced at trial;

(c) ENTER JUDGMENT awarding Plaintiffs punitive damages against all individual Defendants in an amount appropriate to the evidence adduced at trial;

(d) ENTER JUDGMENT awarding Plaintiffs their costs and reasonable attorneys' fees in

this action as provided in 42 U.S.C. §1988(b);

(e) ENTER JUDGMENT against the FTCA Defendants pursuant to the Federal Tort

Claims Act; and

(f) GRANT Plaintiffs such further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

Respectfully Submitted,
*/s/ Alfred Guillaume III*
Alfred Guillaume III (D.C. Bar No. MD0085)
Law Offices of Alfred Guillaume III, LLC
6305 Ivy Ln. Ste. 700
Greenbelt, MD 20770
Tel. 301-377-2158
Fax. 301-812-4254
ag3law@gmail.com

*/s/ Barry Coburn*
Barry Coburn (D.C. Bar No. 358020)
Marc Eisenstein (D.C. Bar No. 1007208)
Coburn and Greenbaum, PLLC
1710 Rhode Island Ave. NW
Washington D.C. 20036
Tel. 202-657-4490
Fax. 866-561-9712
barry@coburngreenbaum.com
marc@coburngreenbaum.com

*/s/ Nicholas G. Madiou*
Nicholas G. Madiou
(D.C. Bar No. MD0039)
Brennan, McKenna, Lawlor, Chtd.
6305 Ivy Ln. Ste. 700
Greenbelt, MD 20770
Tel. 301-474-0044
Fax. 301-474-5730

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of this First Amended Complaint will be provided to all counsel of record by this Court's electronic filing service, this 29th day of May, 2021.


/s/ Barry Coburn

_____