# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUZ DEL CARMEN SALAMA-TOBAR, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:21-cv-00500-CJN |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants.* | |

## DISTRICT DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants District of Columbia, Metropolitan Police Department, Peter Newsham, Jeffrey Carroll, Robert Glover, Andrew Horos, Jason Bagshaw, Daniel Thau, Anthony Alioto, Gregory Rock, James Crisman, and Nicholas Imbrenda (collectively, "District Defendants") move under Rule 12(b)(6) to dismiss Plaintiff's First Amended Complaint [13].  The grounds supporting dismissal are set forth in the Memorandum of Points and Authorities accompanying this Motion.  A proposed order is also included.  Because this Motion is dispositive, the District Defendants have not sought Plaintiffs' consent. *See* LCvR 7(m).

Date:  July 30, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*

MATTHEW R. BLECHER [1012957]
STEPHANIE M. CORCORAN [1510874]
Assistant Attorneys General
Civil Litigation Division
400 6th Street NW
Washington, D.C. 20001
Phone:  (202) 442-9774
Fax:  (202) 730-0586
Email:  matthew.blecher@dc.gov

*Counsel for Defendants District of Columbia,
Metropolitan Police Department, Peter
Newsham, Jeffrey Carroll, Robert Glover,
Andrew Horos, Jason Bagshaw, Daniel Thau,
Anthony Alioto, Gregory Rock, James
Crisman, and Nicholas Imbrenda*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUZ DEL CARMEN SALAMA-TOBAR, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:21-cv-00500-CJN |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DISTRICT DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

The pleading standard of Rule 8(a)(2) is designed in part to ensure that every defendant to a civil action in this Court receives meaningful notice of each claim that the plaintiff intends to pursue against her before being required to shoulder the tremendous burden of civil litigation. It is simply not enough for a plaintiff to allege an injury, speculate as to the cause, and identify a score of individuals who *may have* been involved, asserting no factual predicate for their involvement other than their physical presence in the vicinity. That is, fundamentally, what Plaintiffs' First Amended Complaint [13] (Amended Complaint) attempts in this case. Filed on May 29, 2021, with the benefit of nearly three months of "Doe" discovery, the Amended Complaint now identifies 19 defendants by name, including the District, the Metropolitan Police Department (MPD), former MPD Chief of Police Peter Newsham, and nine current MPD employees (collectively, "the District Defendants").[1] However, MPD is a non-sui juris subordinate District agency. And the Amended Complaint asserts no factual basis for municipal

---

[1] For purposes of this brief, the nine current MPD employees and former Chief Newsham are referred to collectively as, "the individual District Defendants."

liability—other than respondeat superior—against the District, not a single fact concerning Newsham's actions, and as to the remainder of the District Defendants, nothing concerning their involvement other than the bare conclusions that they "participated directly" and/or "authorized, planned, or participated" in some allegedly tortious conduct supposedly contributing to Plaintiffs' alleged injuries.  Am. Compl. ¶¶ 5, 10.  That is not enough to give any of the District Defendants notice as to the claims and allegations—if any—that implicate them personally, and it is not enough to survive a motion to dismiss under Rule 12(b)(6).

Even assuming Plaintiffs allegations satisfy Rule 8(a)(2)'s bare pleading standard, the Amended Complaint would still fail to make out a *prima facie* violation of the Fourth Amendment by any District Defendant (Count 4, Am. Compl. ¶¶ 96-97) because Plaintiffs do not plausibly allege that they were "kettled," as they use that term.  And the First Amendment Assemblies Act, D.C. Code § 5-331.01, *et seq*., does not support a claim of negligence per se arising out of the statutory provision on which Plaintiffs purport to rely in Count 5 (Am. Compl. ¶¶ 98-103).  For these reasons, explained in argument below, the Court should dismiss Counts 4 and 5 for failure to state a claim and, in turn, dismiss the Amended Complaint as to all the District Defendants.

## BACKGROUND

### I.  <u>Factual Background</u>

Plaintiffs Daphne and Electra Bolotas and Luz Del Carmen Salama-Tobar identify as "ordinary citizens" who are residents of Virginia, Washington, D.C., and Maryland, respectively, and who are employed as either educators (the Bolotases) or photojournalists (Salama-Tobar). *See* Am. Compl. ¶ 4.  According to the Amended Complaint, on the evening of May 30, 2020, Plaintiffs traveled together by automobile to downtown D.C., "to protest racial injustice" in the

wake of the now infamous death of George Floyd five days earlier in Minneapolis, MN.  *Id*. ¶¶
1-2, 4, 36.  Arriving "at approximately 9:00 p.m.," Plaintiffs walked (from the unspecified
location where they parked) to St. John's Episcopal Church, located at the corner of 16th Street,
NW and H Street NW, eventually positioning themselves on H Street, "[w]ith the church to their
backs . . . facing Lafayette Square."  *Id*. ¶ 36.  From that location, and apparently joined by
"approximately twenty other [protestors] . . . in the[ ] immediate vicinity," Plaintiffs squared off
with a "group" of federal law enforcement officers, mostly dressed in riot gear, that was
positioned inside the northern boundary of Lafayette Square, "behind a row of chain linked metal
columns."  *Id*. ¶¶ 36, 38.

     The scene evidently turned violent "[s]hortly after [Plaintiffs'] arrival."  *Id*. ¶¶ 5, 41.
According to Plaintiffs, without warning and (in their view) despite no crimes having been
committed, the federal law enforcement officers began firing "less-lethal projectiles" and "tear
gas" toward the protestors.  *Id*. ¶¶ 4-5, 41.  During the melee, a United States Park Police Officer
(Defendant Sheldon Thorpe) allegedly approached Plaintiffs Electra and Daphne Bolotas on H
Street NW, "struck [the former] on the head with his baton," and subsequently "push[ed] [the
latter] to the ground," causing her to suffer a broken wrist.  *Id*. ¶¶ 6, 41, 73.  Around the same
time, while "in a stationary position" on H Street NW and taking pictures with a "professional
grade camera," Plaintiff Salama-Tobar was struck in the eye by a "rubber bullet or similar less-
lethal projectile[ ]" allegedly fired by one of the other United States Park Police Officers named
in the Amended Complaint.  *Id*. ¶¶ 7, 38, 44.

     The three women were briefly separated from one another after sustaining their
respective injuries.  *Id*. ¶¶ 47-50.  Plaintiff Salama-Tobar was ushered to a "makeshift clinic . . .
established in front of St. John's [Episcopal] Church" where a "medic" treated her eye injury and

summoned an ambulance.  *Id*. ¶ 47.  Plaintiff Daphne Bolotas likewise received emergency

medical care—a sling for her injured arm—at the clinic in front of St. John's Church.  *Id*. ¶ 49.

All three women then proceeded north from H Street NW, on 16th Street, NW, where they

eventually reunited "approximately one block from where they were injured."  *Id*. ¶¶ 48-51.

According to the Amended Complaint, MPD personnel, including some or all of the

individual District Defendants, also were deployed to the vicinity of Lafayette Square "in

response to the [May 30, 2020] street protests."  *Id*. ¶ 2.[2]  The Amended Complaint generally

describes two "intersecting police lines" allegedly established by these (and other unspecified)

MPD personnel, that caused Plaintiffs to be "encircled or substantially encircled" on 16th Street

NW and that blocked an ambulance from reaching them.  *Id*. ¶ 55; *see also id.* ¶¶ 53 ("blocked . .

. egress on surrounding streets"), 57 ("ambulance could not reach their location").  In this regard,

however, the Amended Complaint is remarkably thin on specifics:  Plaintiffs do not allege that

they attempted to leave the scene by traveling east (toward 15th Street NW) or west (toward 17th

Street NW) on either H Street NW or I Street NW, nor do they describe the actions of any

specific individual MPD Defendant (attributing all alleged action to, "MPD" or "MPD officers").

*See generally*, *Id*.[3]  Rather, Plaintiffs' factual allegations suggest that they traveled north

unimpeded on 16th Street NW, until they reached K Street NW, where they met "a police line"

blocking northbound pedestrian flow, *id.* ¶ 54; that, at that location, Plaintiffs were initially

"denied permission" by unidentified MPD officers to advance any farther, *id.* ¶ 58; and that

---

[2]      Plaintiffs do not contend that MPD personnel were situated *inside* Lafayette Park or that
any individual MPD Defendant directly caused the injuries they allegedly sustained in that
immediate area.  *See generally*, Am. Compl.

[3]      Plaintiffs' sole allegation regarding former MPD Chief Peter Newsham is that he was
"responsible for the actions of the [MPD] officers."  Am. Compl. ¶ 14.

sometime between 90 minutes and two hours later, "MPD allowed [them]" to pass, *id.* ¶¶ 60, 63.[4]

## II.   **Procedural History**

Plaintiffs filed suit in this Court on February 25, 2021, naming the District, former MPD Chief of Police Peter Newsham, and 100 "Doe" law enforcement officers as defendants and seeking an unspecified amount of damages as compensation for the injuries sustained during their interaction with the federal authorities and allegedly exacerbated by the 90 minutes – two hours that Plaintiffs contend they were prohibited from traveling north on 16th Street NW. *See* Compl. [1]. The next day, Plaintiffs requested [4], and the Court later granted [7], leave for Plaintiffs to take certain discovery to determine the identity of the individual "Doe" defendants named in the original complaint. The Parties thereafter engaged in formal and informal discovery, eventually leading to the filing of Plaintiffs' First Amended Complaint [13] on May 29, 2021, which names an additional 17 defendants, nine of whom are currently employees of MPD. All District Defendants were served electronically as of June 25, 2021.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal when a complaint fails to state a claim upon which relief can be granted. Claims that do not meet the requirements of Rule 8 are properly dismissed under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017) (Brown Jackson, J.), *aff'd sub nom.*, *Cooper v. District of Columbia*, 2017 U.S. App. LEXIS 21793 (D.C. Cir. Nov. 1, 2017); *accord Palmieri v.*

---

[4]   Plaintiffs do not provide any specifics regarding their request to pass through the "police line," including to whom it was made; nor do they describe the subsequent interaction with the unidentified officer(s), the rationale (if any) they were given when their request was "denied," or the circumstances that resulted in their being permitted to pass through the "police line."

*United States*, 72 F. Supp. 3d 191, 205-06 (D.D.C. 2014).  Under Rule 8, a complaint must, among other things, include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'The purpose of this minimum standard is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense, and to determine whether the doctrine of *res judicata* applies.'"  *McNeil v. District of Columbia*, 109 F. Supp. 3d 8,  9-10  (D.D.C. 2015) (Mehta, J.) (quoting *Palmieri*, 724 F. Supp. 3d at 205); *accord Rossman v. Leader*, 2020 U.S. Dist. LEXIS 92795 at *1 (D.D.C. May 27, 2020) (Nichols, J.).

In addition to satisfying the minimum standard of Rule 8, to survive a Rule 12(b)(6) motion the factual allegations of the complaint must plausibly "raise a right to relief above the speculative level, on the assumption that all the allegations . . . are true."  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").  In making this assessment, courts may accept only[5] *well-pleaded* factual allegations; conclusory allegations and legal conclusions are not entitled to an assumption of veracity.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-79.  Ultimately, if a complaint fails to "set forth information to suggest that there is some recognized legal theory upon which relief may be granted," it must be dismissed.  *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1078 (D.C. Cir. 1984).

---

[5]     In addition to well-pleaded facts, the Court may consider "documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation and quotations omitted).

**ARGUMENT**

I.    **Plaintiffs Have Not Pled an Actionable Fourth Amendment Claim Against Any**
      **District Defendant.**

Count 4 of the Amended Complaint purports to state a claim under 42 U.S.C. § 1983

against the District Defendants for the alleged violation of Plaintiffs' Fourth Amendment right to

be free from unreasonable seizure.  Am. Compl. ¶¶ 96-97.[6]  A claim of unreasonable seizure in

violation of the Fourth Amendment consists of a restraint on a person's liberty that furthers no

governmental interest.  *See Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008).

A person's liberty can be *unconstitutionally* restrained either by "force" or by "acquisition of

control."  *Torres v. Madrid*, 141 S. Ct. 989, 1001 (2021).  And in the latter scenario—the only

one[7] conceivably at issue in Count 4—the claimant bears the burden of proving both (1) "actual

control" by the government actor, *id.* at 1001 ("seizure by acquisition of control involves either

voluntary submission to a show of authority or the termination of freedom of movement. . . .

actual control is a necessary element for this type of seizure"); and (2) intent to restrain, *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (Fourth Amendment seizure occurs "only when

there is a governmental termination of freedom of movement *through means intentionally*

*applied*") (emphasis in original); *accord Torres*, 141 S. Ct. at 998 ("appropriate inquiry is

---

[6]    More specifically, Plaintiffs bring Count 4 against the District, each individually-named
District Defendant, and John Does 51-100, and outline its legal basis in two paragraphs, as
follows:  "The actions of [the District Defendants] . . . , namely[,] the arrest and detention of
Plaintiffs inside the kettle, without a warrant or probable cause, violated the rights of Plaintiffs
under the Fourth Amendment [ ]," Am. Compl. ¶ 96; and "[t]hese Defendants also are liable
pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' constitutional rights because these
violations were caused by a policy, practice, or custom of the District of Columbia," *id.* ¶ 97.

[7]    Although Plaintiffs alleges various uses of force by federal law enforcement officers, *see*
Am. Compl. ¶¶ 41-46, the Amended Complaint contains no such allegations with respect to the
District Defendants.

whether the challenged conduct *objectively* manifests an intent to restrain") (emphasis in original).  Additionally, while 42 U.S.C. § 1983 is the proper vehicle for alleging a constitutional tort against a municipality and the employees thereof, municipal liability claims are subject to the strictures of *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978), and claims against individual defendants must be "independently assessed" under the rubric of qualified immunity, *see Black Lives Matter D.C. v. Trump*, 2021 U.S. Dist. LEXIS 114699 at *71-72 (D.D.C. June 21, 2021) (applying qualified immunity principles to Fourth Amendment seizure claim); *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805-06 (8th Cir. 2010) ("each defendant's conduct must be independently assessed . . . . Section 1983 does not sanction tort by association").

Count 4 of the Amended Complaint does not expressly identify MPD as a named defendant, but whether that omission was oversight or not is of no moment—MPD is a non-sui juris subordinate District agency and must be dismissed on that basis.  *See Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 124-25 (D.D.C. 2017).  As to the remainder of the District Defendants, Count 4 should be dismissed because the Amended Complaint fails to plead facts sufficient to establish the District's liability under *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978); Plaintiffs' single, conclusory fact regarding former Chief Newsham—that he was "responsible" for the actions of MPD officers—is insufficient to prove either personal or supervisory liability; and Plaintiffs' allegations concerning the balance of the District Defendants neither satisfy the pleading standard of Rule 8(a) nor plausibly allege an unconstitutional seizure, let alone one that was so "clearly established" as to defeat qualified immunity.

A. **The Amended Complaint Fails to Allege Facts Sufficient to Establish the District's Liability Under** *Monell v. New York City Dep't of Soc. Servs.,* **436 U.S. 658 (1978).**

As noted, the District, like all municipalities, is not liable for constitutional violations under 42 U.S.C. § 1983 except where the plaintiff can establish vicarious liability under *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978). But liability under *Monell* is seriously circumscribed: The plaintiff must allege *both* a predicate constitutional violation *and* that a custom or policy of the District was the "moving force behind [it]." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (quotations omitted). Thus, a showing of common law respondeat superior is not enough. *Monell*, 436 U.S. at 691. And the failure to plead facts establishing a custom or policy is grounds for dismissal under Rule 12(b)(6). *See Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015); *accord Hodges v. District of Columbia*, 975 F. Supp. 2d 33, 54 (D.D.C. 2013) ("The fact that [a] claim arises under section 1983 does not relieve [plaintiff] of the obligation to satisfy the criteria established in *Iqbal* and *Twombly*").

Plaintiffs' Amended Complaint includes only a single, formulaic allegation that could arguably be read as addressing the District's liability under the *Monell* framework: "Defendants [ ] are liable pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' constitutional rights because these violations *were caused by a policy, practice, or custom* of the District of Columbia." Am. Compl. ¶ 97 (emphasis added). That, however, is a legal conclusion that the Court cannot credit in ruling on a motion to dismiss. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. And the Amended Complaint is otherwise devoid of *facts* that could be construed as consistent with—or supporting the existence of—a "policy, practice, or custom" that caused the constitutional deprivation alleged in Count 4. *See generally*, Am. Compl. In

9

fact, the balance of Plaintiffs' allegations related to the District's conduct seem intentionally designed to establish respondeat superior liability, *see e.g.*, *Id.* ¶¶ 13 ("Defendant District of Columbia . . . operates and governs the MPD pursuant to the laws of the District of Columbia.  In this case, the District [ ] and the MPD acted through their agents, employees, and servants," 29 ("[individual District Defendants] are law enforcement officers employed by [MPD].  They are agents of the District").   But that, again, is insufficient to establish the District's liability for purposes of Count 4.  *Monell*, 436 U.S. at 691.  Accordingly, because the Amended Complaint does not plausibly allege a basis for municipal liability under 42 U.S.C. § 1983, *see Blue, Hodges, supra*, the Court should dismiss Count 4 as to the District.

**B.**  **Plaintiffs' Sole Allegation Concerning Former Chief Newsman Is Insufficient to Establish Personal or Supervisory Liability Under 42 U.S.C. § 1983.**

Despite having been dropped from the caption of the Amended Complaint, former MPD Chief of Police Peter Newsham is still identified as a named defendant in Count 4 (as well as Count 5, addressed below).  Plaintiffs' sole allegation regarding Newsham is that he was "responsible for the actions of the [MPD] officers."  Am. Compl. ¶ 14.[8]  The Amended Complaint is otherwise silent as to Newsham's conduct or whereabouts on May 30, 2020, thereby conceding he was not *personally* on the scene or *directly* involved in any alleged deprivation of Plaintiffs' Fourth Amendment rights.  *See generally*, *id*.  And Plaintiffs do not otherwise attempt to describe how Newsham was "responsible," *id.* ¶ 14, apparently resting—as they did with the District—on what would be tantamount to respondeat superior liability.  However, under 42 U.S.C. § 1983, respondeat superior cannot be used to impose liability on a

---

[8]     Only three of the individual District Defendants were assigned the rank of MPD "officer[ ]," Am. Compl. ¶ 14, on May 30, 2020:  Gregory Rock, James Crisman, and Nicholas Imbrenda.

supervisor for the conduct of a subordinate, *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28

(D.C. Cir. 2004); indeed, the standard is considerably higher, *see id*. at 27-28 (citing *Rizzo*, 432

U.S. at 371, 376, among others; holding supervisory liability under 42 U.S.C. § 1983 requires an

"affirmative link" establishing the supervisor's "direct responsibility" for the subordinate's

misconduct).  Plaintiffs' single, formulaic allegation concerning former Chief Newsham's

"responsi[bility] for the actions of [MPD] officers," Am. Compl. ¶ 14—at best, a legal

conclusion, *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555—does not measure up, and the

Court should therefore dismiss Count 4 as to him.[9]

> ## C. Count 4 Should Be Dismissed as to the Individual District Defendants Because the Amended Complaint Fails to Satisfy the Pleading Standard of Rule 8(a) and Does Not Plausibly Allege Any Unconstitutional Seizure.
>
> > ### 1. The Court Should Dismiss the Amended Complaint, as to the Individual District Defendants, Because It Does Not Specify What *Any* Individual Allegedly Did to Cause (or Contribute To) Plaintiffs' Alleged Injuries.

Even if Plaintiffs had succeeded at outlining the parameters of a colorable Fourth

Amendment violation in Count 4, generally (they did not, *see* [*infra* at 16-19]), dismissal of that

claim as to each of the individual District Defendants would still be warranted for failure to

satisfy the pleading requirements of Rule 8(a).  As noted, Rule 8(a) requires that a complaint

supply a short and plain statement that provides each defendant fair notice of the claims and

allegations implicating her personally such that she can adequately respond and mount an

---

[9]      To the extent Plaintiffs are attempting to proceed against Newsham in his official capacity *only*, that charge would be duplicative of the same cause of action against the District and is properly dismissed as such.  *Atchison v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (.  "When sued in their official capacities, government officials are not personally liable for damages.  A . . . suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself"); *Doe v. D.C. Metro. Police Dep't*, 948 A.2d 1210, 1213 n.3 (D.C. 2008) (noting substitution of the District as defendant in place of a District official sued in her official capacity).

informed defense.  *See* Fed. R. Civ. P. 8(a); *Rossman*, 2020 U.S. Dist. LEXIS 92795 at *1;

*McNeil*, 109 F. Supp. 3d at 9-10.  Relying on that principle, courts in this jurisdiction have

rejected pleadings that do not give defendants fair notice of what—specifically—they are alleged

to have done wrong.  *See e.g.*, Slip. Op., *Blakeney v. O'Donnell*, 14-cv-1139 (D.D.C. Jan. 29,

2016) ("[t]he Individual Defendants cannot possibly answer the Amended Complaint or prepare

an adequate defense when Plaintiff has not specified what acts each Individual Defendant

allegedly committed against him"); *Dorsey v. American Express Co.*, 499 F. Supp. 2d 1, 3

(D.D.C. 2007) ("facts [ ] alleged in the complaint are too vague to give the defendants the notice

to which they are entitled"); *Hilska v. Jones*, 217 F.R.D. 16, 24-25 (D.D.C. 2003) ("dismissal is

in order because the plaintiff fails to make any mention of [the defendant] or tie any of his claims

to her . . . [and] fails to put [her] on notice . . . such that she can respond or construct a defense").

And authority from other federal circuits[10] supports the same result, specifically holding that the

pleadings must connect allegations to defendants in a meaningful way—a principle with special

import in the context of constitutional claims brought pursuant to 42 U.S.C. § 1983, which "does

not sanction tort by association."  *Waddle*, 595 F.3d at 805-06.

Plaintiffs' Amended Complaint, generally—and Count 4, specifically—commits

precisely this error in naming Assistant Chief Carroll, Commander Glover, Lieutenants Horos

and Bagshaw, Sergeants Thau and Alioto, and Officers Rock, Crisman, and Imbrenda, all in their

---

[10]     *See e.g. Maeder v. Tom Bush Auto-Plex Inc.*, 2015 WL 1277925 at *4 (M.D. Fla. Mar.
20, 2015) (granting motion under Rules 8(a) and 12(b)(6) in 42 U.S.C. § 1981 claim "against
four different corporations and one individual [where complaint did not make] any specific
allegations as to the conduct of any of [the] Defendants"); *Calugay v. GMAC Mortgage*, 2009
WL 3872359 at *1-2 (D.Ariz. No. 18, 2009) (dismissing defendant on Rule 12(b)(6) motion
where complaint did not contain "a single specific allegation . . . directed to [the defendant],"
reasoning the complaint fail[ed] to set forth sufficiently specific allegations against [the
defendant] as required by Rule 8(a) . . . to put [the defendant] on notice of the claims against it").

individual capacities.  In total, the Amended Complaint contains *only two*, arguably substantive allegations referencing these individuals:  That "Plaintiffs were detained and kettled for approximately two hours by, *inter alia*, [the aforementioned MPD officers and officials], and John Does 51-100, . . . preventing Plaintiffs from seeking medical aid for their injuries," Am. Compl. ¶ 8; and that "[the same individuals] are agents of the District of Columbia, who authorized, planned, or participated in the kettle, and/or unconstitutional detention of Plaintiffs May 30, 2020 [*sic*]," *id.* ¶ 29.  Practically speaking, the first of those allegations is not at all factual:  "Detained" and "kettled" are conclusory legal conclusions that are irrelevant for purposes of the Court's assessment of Plaintiffs' pleadings.  *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555; *cf. Gudger v. District of Columbia*, 74 F. Supp. 3d 47, 52 (D.D.C. 2014) ("[the plaintiff] supplies a legal conclusion—that [the defendant police officers] knew no probable cause existed for her arrest—and asked the Court to derive a fact—that [the officers] were present for the search and arrest.  This is not a reasonable inference:  The Court may not supply facts that [the plaintiff] herself failed to plead").  And Plaintiffs' other substantive allegation concerning the individual District Defendants—that they "authorized, planned, or participated in the [alleged] kettle, and/or unconstitutional detention," Am. Compl. ¶ 29—is not only conclusory (a problem in its own right, *Iqbal, Twombly, supra*), but also vague, noncommittal, and as such, antithetical to the central purpose of Rule 8(a)(2).  Indeed, Plaintiffs' list of three distinct categories of allegedly offensive conduct ("authorized," "planned," "participated"), phrased in the disjunctive ("or . . . and/or"), could not possibly provide any of the nine individuals who are the target of Count 4 any account of what, specifically, they are alleged to have done wrong.

Plaintiffs do not otherwise plead any specific conduct by any specific individual District Defendant.  *See generally*, Am. Compl.  And the balance of their factual allegations—

13

concerning, for example, more than one "police line," apparently located blocks apart, *id.* ¶¶ 53-55, and different responses or instructions received at different times by different *unidentified* MPD personnel, *compare id.* ¶ 58 ("Plaintiffs were denied permission from the MPD Officers to leave"), with *id.* ¶¶ 60 ("MPD allowed Ms. Salama-Tobar and the medic to leave"), 63 (same with respect to Plaintiffs Daphne and Electra Bolotas)—render their failure to plead specific conduct by specific defendants particularly deficient.[11]  That is especially true in the context of Count 4, which purports to charge each of the individual District Defendants *personally* for committing a constitutional tort that requires proof of intent by the alleged tortfeasor.  *See Torres*, 141 S. Ct. at 998.

In sum, without more detail concerning who did what and when—detail that has already been the subject of discovery, *see supra* at 5—Assistant Chief Carroll, Commander Glover, Lieutenant Horos, Lieutenant Bagshaw, Sergeant Thau, Sergeant Alioto, Officer Rock, Officer Crisman, and Officer Imbrenda, cannot possibly know what acts they allegedly committed on May 30, 2020, to cause (or contribute to) any of Plaintiffs' alleged injuries.  In turn, none of these individuals could conceivably answer Plaintiffs' allegations or otherwise prepare an adequate defense to Plaintiffs' very serious contention that each of them—in some opaque way—violated the Fourth Amendment.  *Rossman, McNeil, supra.*  Plaintiffs' Amended Complaint thus fails to provide the notice required of Rule 8(a) and should be dismissed pursuant to Rule 12(b)(6).  *Accord Street v. O'Toole*, 2021 U.S. Dist. LEXIS 31856 at *12-14 (E.D. Mo.

---

[11]     Officers or officials who were not part of the "police line" that allegedly prohibited Plaintiffs (at least temporarily) from traveling north on 16th Street NW, past the intersection at K Street NW, Am. Comp. ¶¶ 54, 58, 60, 63, would have had no part whatsoever in impeding Plaintiffs' movement; and the individual(s) who allegedly "denied [Plaintiffs] permission . . . to leave," *id.* ¶ 58, would presumably face a different liability analysis than the individuals who allowed them to proceed, *id.* ¶¶ 60, 63.

Feb. 22, 2021) ("All claims against the individual defendants against whom no specific allegations are made will be dismissed. . . . Defendants cannot be held liable merely because they were employed by the [municipal police department] on the night some members of that department may have violated plaintiffs' rights—liability under § 1983 requires proof of a causal link between each defendant and the *specific wrongs* that defendant committed.  Put differently, asserting broad, sweeping allegations that a group of defendants committed constitutional misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group.") (emphasis in original; internal citation omitted); *cf. Scott v. Conley*, 937 F. Supp. 2d 60, 69-70 (D.D.C. 2013) ("Although it would likely be error for th[e] Court to dismiss claims against John Doe defendants without giving [the plaintiff] a chance for discovery, this is not the situation at hand.").

**2.   Accepting the Well-Pleaded Factual Allegations of the Complaint as True, Plaintiffs Do Not Plausibly Allege a Deprivation of Any Liberty Interest.**

Even if Plaintiffs had satisfied the pleading standard of Rule 8(a), the Amended Complaint would still fail to make out a prima facie violation of the Fourth Amendment by any District Defendant because Plaintiffs do not plausibly allege conduct giving rise to an actionable seizure.  As explained immediately below, ignoring Plaintiffs' conclusions and conjecture, the Amended Complaint suggests not that Plaintiffs were "kettled," "detained," or "arrested," in the ordinary sense of those terms, but that MPD temporarily impeded their travel on a public street (16th Street NW)—in one direction (north) and at a single location (the intersection of 16th and K Streets NW), leaving them otherwise free to move about.  Such a modest restraint on an individual's movement does not constitute a seizure under the Fourth Amendment, and Count 4 of the Amended Complaint thus fails as a matter of law to state any plausible claim for relief against *any* District Defendant.  Even if the Court disagrees, the conclusion that a Fourth

Amendment seizure can occur under the circumstances alleged would not have been compelled by "clearly established" law in existence on May 30, 2020—meaning, at a minimum, the individual District Defendants are entitled to qualified immunity as to Count 4.

> ### i. Plaintiffs Do Not Plausibly Allege That They Were "Kettled," but Rather, that Their Ability to Move in a Single Direction from a Single Location—North on 16th Street NW—Was Temporarily Impeded.

Fundamentally, Count 4 of the Amended Complaint rests on the proposition that MPD personnel trapped Plaintiffs in a "kettle," Am. Compl. ¶ 96—a policing maneuver whereby an individual is, according to the Amended Complaint, "encircled or substantially encircled by police lines," *id.* ¶ 55.  That, Plaintiffs contend, resulted in their de facto "arrest and detention . . . without a warrant or probable cause," thereby violating their rights under the Fourth Amendment.  *Id.* ¶ 96.  It is axiomatic, however, that in assessing Plaintiffs' account to determine whether it plausibly gives rise to a Fourth Amendment violation, the Court may only assume the veracity of Plaintiffs' "well-pleaded factual allegations."  *Iqbal*, 556 U.S. at 679.  And the Amended Complaint rests in critical respects on unsupported conclusions—both factual and legal—that do not qualify as "well pleaded."  *See supra* at 5-6 (legal standard).

For example, Plaintiffs' repeated assertions that they were "detained," "arrest[ed]," and "kettled,"[12] are all legal conclusions that are categorically irrelevant.  *Iqbal*, 556 U.S. at 678 ("tenet that a court must accept as true [complaint's] allegations . . . inapplicable to legal conclusions"); *cf. Gudger*, 74 F. Supp. 3d at 52 ("the Court begins its consideration of a motion

---

[12]     *See e.g.*, Am. Compl. ¶¶ 8 ("detained and kettled," and "detained by MPD officers and kept in a kettle"), 56 ("unconstitutionally detained in the police kettle on 16th St[reet] NW"), 61 ("unconstitutionally detained in the kettle"), 63 ("unconstitutionally detained for nearly two hours"), 64 ("detained in the kettle without probable cause"), 96 ("arrest and detention of Plaintiffs inside the kettle").

to dismiss by assuming the veracity of well-pleaded factual allegations . . . *and then* determines whether they plausibly give rise to an entitlement to relief.  It does not work the other way around.") (emphasis and ellipses in original, internal quotation marks and citations omitted). Likewise, Plaintiffs' assertion that MPD "blocked all alternate routes of egress [east and west] on . . . H Street NW, I Street NW, and K Street NW," apparently by forming a "police line [north-to-south] on 16th Street," Am. Compl. ¶ 53 (emphasis added), is not only logically impossible[13] but also conclusory, given that Plaintiffs do not allege that they attempted to exit 16th Street NW along any of those intersecting streets.  *See Iqbal*, 556 U.S. at 681 ("conclusory [allegations] not entitled to be assumed true").  So too, Plaintiffs' ultimate conclusion regarding their alleged encounter with MPD personnel—that they were "encircled *or substantially encircled* by police lines," Am. Compl. ¶ 55 (emphasis added)—is a tacit admission that they do not actually know whether "alternate routes of egress," other than northbound on 16th Street NW, *id.* ¶ 53, were in fact blocked.  *Cf. Ahmed v. Fed. Bureau of Prisons*, 2021 U.S. Dist. LEXIS 114358 at *6 (D.D.C. Mar. 18, 2021) (Nichols, J.) (rejecting claim where records attached to the complaint "directly contradict[ed the plaintiff's] conclusory allegations.").

Setting aside Plaintiffs' conclusions and conjecture, what their factual allegations suggest of their alleged interaction (and lack thereof) with MPD on May 30, 2020, is something well short of "kettling," "arrest," or "detention," Am. Compl. ¶ 96.  By their own account, Plaintiffs moved freely along H Street NW—apparently unimpeded by any MPD law enforcement presence—from wherever they parked to St. John's Episcopal Church, Am. Compl. ¶ 36, between that location and Lafayette Square, *id.* ¶¶ 38-39, and back again to receive medical

---

[13]     A single line of police officers oriented north-to-south on 16th Street NW (or any street for that matter) could not possibly block pedestrian flow east *and* west:  If were located on the east side of 16th Street NW, egress to the west would still be accessible, and vice versa.

treatment following their tussle with federal law enforcement, *id.* ¶¶ 47, 49.  Plaintiffs then chose to travel north on 16th Street NW, rather than east or west on H Street NW, *see id.* ¶¶ 48-51—a choice they do not explain.  And they continued northbound unimpeded for two blocks to the intersection of 16th and K Streets NW, necessarily passing the intersection at 16th and I Streets NW, where again, they presumably could have departed to the east or the west or both, *id.* ¶ 54.  At *that* point—at the intersection of 16th and K Streets NW—Plaintiffs were allegedly stopped by MPD personnel from traveling further north for somewhere on the order of two hours.  *Id.* ¶ 58.

Again, Plaintiffs do *not* allege that they were ordered by anyone in MPD uniform to stop and remain in place or that they were otherwise prohibited by MPD from turning around (and proceeding south) or from moving freely along the two blocks of 16th Street NW, between Lafayette Square and K Street NW.  And Plaintiffs describe no efforts by them or anyone else to exit the area to either the east (toward 15th Street NW) or west (toward 17th Street NW) on either H Street NW or I Street NW.  Nor do Plaintiffs allege that they personally engaged MPD personnel at *any* location other than the intersection of 16th and K Streets NW.  Of course, the Court is not at liberty to assume the veracity of facts that Plaintiffs did not plead.  *Gudger*, 74 F. Supp. 3d at 52 (citing *Twombly*, 550 U.S. at 555, for the proposition that, "the Court may not supply facts that [the plaintiff] herself failed to plead").  And the well-pleaded allegations Plaintiffs *did* plead suggest, at worst, that MPD personnel temporarily restricted Plaintiffs' movement in one direction—northbound—and at one location—the intersection of 16th and K Streets NW.

**ii.** **MPD's Alleged Restraint on Plaintiffs' Freedom of Movement in a Single Direction from a Single Location—North on 16th Street NW—Does Not Give Rise to a Seizure Under the Fourth Amendment.**

The restraint on movement Plaintiffs have in fact pled—a temporary restriction on pedestrian travel in one direction and at one location—does not constitute a seizure under the Fourth Amendment as a matter of law.  As explained, a seizure under the Fourth Amendment requires significant, intentional governmental restraint of a person's freedom of movement. *Lewis*, 523 U.S. at 844.  Where (as here) no physical force by the alleged tortfeasor(s) is pled, *see supra* at fn.7, the plaintiff asserting a seizure in violation of the Fourth Amendment bears the burden of proving both (1) "actual control" by the government actor, *Torres*, 141 S. Ct. at at 1001; and (2) intent to restrain, *Lewis*, 523 U.S. at 844; *Torres*, 141 S. Ct. at 998.  Importantly, an individual's ability to walk away from a police encounter is doctrinally incongruous with a finding of "actual control."  *See e.g., Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) ("Because there was no verbal or physical impediment to [the plaintiff's] freedom of movement, there was no submission to authority on his part even in a metaphysical sense . . . [and thus] no seizure occurred"); *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011) ("Although [the plaintiff's] freedom of movement was certainly restrained, she still had the ability to, and indeed did, walk away.  Accordingly, . . . the defendants' involvement in forcing [the plaintiff] down the side street[ ] did not [cause] a Fourth Amendment injury.").  And, again, drawing *reasonable* inferences from Plaintiffs' well-plead factual allegations, Plaintiffs were free to walk away from their encounter with MPD at the intersection of 16th and K Streets NW—they could have proceeded southbound on 16th Street NW (the direction from which they came) as well as east- or west- bound on either H or I Streets NW.  *See supra* at 17-18.  Accordingly, Plaintiffs have pled no "actual control," *Torres*, 141 S. Ct. at at 1001, no

unconstitutional seizure by MPD personnel, and thus no claim for relief under the Fourth Amendment.

### iii.  Alternatively, the Individual District Defendants Are Entitled to Qualified Immunity.

Even if Plaintiffs' well-pleaded allegations could be construed to make out a cognizable Fourth Amendment seizure, that conclusion would not have been compelled by "clearly established" law existing on May 30, 2020, and the individual District Defendants are thus entitled to qualified immunity as to Count 4.  The doctrine of qualified immunity protects individual government actors from suit under 42 U.S.C. § 1983 so long as their actions were objectively reasonable in light of "clearly established" constitutional law.  *See White v. Pauly*, 137 S. Ct. 548, 551 (2017) (doctrine of qualified immunity bars constitutional claims against individuals absent violation of "clearly established statutory or constitutional rights of which a reasonable person would have known").  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  And, specifically in context of alleged unconstitutional seizures, "the Supreme Court has repeatedly stressed the need to *identify a case* where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."  *Black Lives Matter D.C.*, 2021 U.S. Dist. LEXIS 114699 at *71-72 (emphasis in original; internal quotations omitted to *Wesby, supra*).  Of course, the District Defendants are aware of no controlling precedent clearly establishing that a law enforcement officer's blocking of pedestrian flow in one direction—leaving pedestrians otherwise free to move about—constitutes a seizure for purposes of the Fourth Amendment.  And, in fact, authority from other federal circuits suggests just the opposite.  *See supra* at 19 (citing *Johnson*, 926 F.3d at 506, and *AFL-CIO*, 637 F.3d at 1191).  As such, the individual

District Defendants are entitled to immunity from Plaintiffs' Fourth Amendment claim, and

Count 4 should be dismissed as to them on that basis.[14]

## II.     __Plaintiffs Do Not State a Claim for Negligence Per Se.__

Count 5 of the Amended Complaint purports to state a claim of negligence per se against

the District Defendants arising out of the alleged violation of unspecified "rights" under the First

Amendment Assemblies Act.  *See* Am. Compl. ¶¶ 98-103.  Plaintiffs do not cite the provision of

the Act that they contend was violated—*i.e.*, the provision forming the basis of their negligence

per se claim—although the terminology they employ tracks the statutory language of D.C. Code

§ 5-331.08.  *See id.* ¶ 99.  That provision (titled, "Use of police lines") provides:

> No emergency area or zone will be established by using a police line
> to encircle, or substantially encircle, a demonstration, rally, parade,
> march, picket line, or other similar assembly (or subpart thereof)
> conducted for the purpose of persons expressing their political,
> social, or religious views except where there is probable cause to
> believe that a significant number or percentage of the persons
> located in the area or zone have committed unlawful acts (other than
> failure to have an approved assembly plan) and the police have the
> ability to identify those individuals and have decided to arrest them;
> provided, that this section does not prohibit the use of a police line
> to encircle an assembly for the safety of the demonstrators.

D.C. Code § 5-331.08.  Assuming D.C. Code § 5-331.08 is indeed the section of the First

Amendment Assemblies Act on which Plaintiffs intend to rely for purposes of Count 5, they are

out of luck:  That provision does not set forth the kind of specific guidance that is required to

---

[14]     As above, *see supra* at 12-14, Plaintiffs' failure to provide any account of what, specifically, each individual District Defendant is alleged to have done wrong is also problematic for qualified immunity purposes.  It is well settled that, "to defeat qualified immunity, a plaintiff must allege that each defendant, through the officials *own* individual actions, has violated the Constitution."  *Black Lives Matter D.C.*, 2021 U.S. Dist. LEXIS 114699 at *71 (cleaned up; emphasis in original; quotations omitted to *Elkins*, 690 F.3d at 564).  Accordingly, absent more detail in their allegations, Plaintiffs cannot expect to defeat qualified as to the individual District Defendants, even if they are able to identify "clearly established" law in support of their unconstitutional seizure claim.

form the basis of negligence per se—a conclusion previously drawn by this Court in *Horse v.*
*District of Columbia*, No. 17-cv-1216 (ABJ) and *Schultz v. District of Columbia*, 18-cv-0120
(ABJ).

Under District of Columbia law, a statute will support a claim of negligence per se "only"
if it "imposes specific duties," *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038-40
(D.C. 2014), and statutes that confer discretion or simply restate a common law standard of care
do not qualify, *see* Butler, 101 A.3d at 1040; *see also Chadbourne v. Kappaz*, 779 A.2d 293,
296-97 (D.C. 2001); *accord Sibert-Dean v. Wash. Metro. Area Transit Auth.*, 721 F.3d 699, 703-
05 (D.C. Cir. 2013); *Joy v. Bell Helicopter Textron*, 999 F.2d 549, 558-59 (D.C. Cir. 1993).
Ruling on the defendants' motions to dismiss in *Horse* and *Schultz*, Judge Berman Jackson
employed precisely that rule and dismissed the plaintiffs' negligence per se claim arising out of
D.C. Code § 5-331.08 as follows:

> [D.C. Code § 5-331.08] is similar to the [statutes] in *Joy* [*supra*],
> *Chadbourne* [*supra*], and the second regulation in *Sibert-Dean*
> [*supra*]. It sets forth general guidelines that rely on resorting to a
> reasonableness standard. When the statute uses the phrases
> "probable cause to believe," "significant number," "ability to
> identify," "have decided to arrest," they are all general terms and
> don't provide clear rules that govern the officer's conduct. Whether
> the officers believe that a significant number or percentage of the
> people in the area committed unlawful acts turns on the inquiry
> regarding the reasonableness of their belief and actions and what a
> reasonable person considers to be a significant number. Thus, the
> law doesn't set out the kind of specific guidelines that would allow
> one to determine whether the statute has been violated without
> resorting to a common law reasonable care analysis, which is what
> the Court said in *Chadbourne*[, 779 A.2d] at 297.

District Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. at 31:22-33:1. Judge Berman
Jackson's ruling was well-reasoned, and there is no basis in law or fact to reach a different
outcome here. *See Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 165 (D.D.C. 2019)

(discussing rules favoring adherence to judicial precedents). Accordingly, Count 5 should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint as to all the District Defendants.

Date: July 30, 2021                                          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
STEPHANIE M. CORCORAN [1510874]
Assistant Attorneys General
Civil Litigation Division
400 6th Street NW
Washington, D.C. 20001
Phone: (202) 442-9774
Fax: (202) 730-0586
Email: matthew.blecher@dc.gov

*Counsel for Defendants District of Columbia, Metropolitan Police Department, Peter Newsham, Jeffrey Carroll, Robert Glover, Andrew Horos, Jason Bagshaw, Daniel Thau, Anthony Alioto, Gregory Rock, James Crisman, and Nicholas Imbrenda*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LUZ DEL CARMEN SALAMA-TOBAR, *et al.*,

    *Plaintiffs*,

    v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants.*

Civil Action No. 1:21-cv-00500-CJN

## <u>ORDER</u>

Upon consideration of the District Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and the entire record, it is hereby:

**ORDERED** that the District Defendants' Motion is GRANTED; and it is further

**ORDERED** that Plaintiffs' First Amended Complaint is DISMISSED as to Defendants District of Columbia, Metropolitan Police Department, Peter Newsham, Jeffrey Carroll, Robert Glover, Andrew Horos, Jason Bagshaw, Daniel Thau, Anthony Alioto, Gregory Rock, James Crisman, and Nicholas Imbrenda.

**SO ORDERED.**

Date: _____

_____
CARL J. NICHOLS
United States District Judge