# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Luz Del Carmen Salama-Tobar
5315 Brinkley Road
Temple Hills, MD 20748

Daphne Bolotas
455 S. Maple Ave
Apt. 219
Falls Church, VA 22046

Electra Bolotas
6645 Georgia Ave, NW
Washington, DC 20012

                              Plaintiffs,

v.                                      Case No. 1:21-cv-00500-CJN

Officer Sheldon Thorpe
in his official and individual capacities,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Detective Wayne Humberson,
in his official and individual capacities,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Officer Jared Tyng,
in his official and individual capacities,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Officer Daniel Glendenning,
in his official and individual capacities,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Officer Pedro Rancier,
in his official and individual capacities,
United States Park Police

1100 Ohio Drive SW
Washington, DC 20024

Officer Andrew Lauro,
in his official and individual capacities,
United States Park Police
1100 Ohio Drive SW
Washington, DC 20024

Assistant Chief Jeffrey Carroll
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Commander Robert Glover
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Lieutenant Andrew Horos
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Lieutenant Jason Bagshaw
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059
Washington, DC 20001

Sergeant Daniel Thau
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Sergeant Anthony Alioto
in his official and individual capacities,

Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Officer Gregory Rock
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Officer James Crisman
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

Officer Nicholas Imbrenda
in his official and individual capacities,
Metropolitan Police Department
300 Indiana Avenue, NW,
Room 5059,
Washington, DC 20001

John Does 1 to 100;

Peter Newsham, in his official and individual
capacities,
5036 Davis Ford Road
Woodbridge, VA 22192

District of Columbia
c/o Office of the Attorney General
406 6th Street, N.W.
Washington, DC  20001

United States of America
c/o U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530

United States Park Police
United States Department of the Interior
National Park Service

1100 Ohio Drive, S.W.
Washington, DC 20242

                         Defendants.

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Daphne Bolotas, Electra Bolotas, and Luz Del Carmen Salama-Tobar, through undersigned counsel, hereby bring their Second Amended Complaint against Defendants Peter Newsham, United States Park Police ("USPP") Officer Sheldon Thorpe, USPP Detective Wayne Humberson, USPP Officer Jared Tyng, USPP Officer Daniel Glendenning, USPP Officer Pedro Rancier, USPP Officer Andrew Lauro, District of Columbia Metropolitan Police Department ("MPD") Assistant Chief Jeffrey Carroll, MPD Commander Robert Glover, MPD Lieutenant Andrew Horos, MPD Lieutenant Jason Bagshaw, MPD Sergeant Daniel Thau, MPD Sergeant Anthony Alioto, MPD Officer Gregory Rock, MPD Officer James Crisman, MPD Officer Nicholas Imbrenda, the District of Columbia, the United States of America, the USPP, the United States National Park Service, United States Department of the Interior, and John Does 1-100.

1.      On May 25, 2020, George Floyd, an unarmed African American man, was killed while in police custody in Minneapolis, MN. Mr. Floyd had been arrested for allegedly using a counterfeit twenty-dollar bill at a grocery store. A police officer pressed his knee into the back of Mr. Floyd's neck, and his back, for at least eight minutes and forty-six seconds. A bystander recorded the killing on her mobile telephone.

2.      In the wake of Mr. Floyd's killing, Americans from across the country exercised their constitutional rights of freedom of speech and assembly and took to the streets to peacefully protest Mr. Floyd's death. In Washington D.C., protestors gathered throughout the city to protest

4

Mr. Floyd's death.  Lafayette Square, a public park located directly north of the White House, was a major gathering place for protestors in Washington D.C. in the days after Mr. Floyd's death. The Metropolitan Police Department ("MPD") and other federal law enforcement agencies were deployed throughout the District of Columbia, including in and around Lafayette Square, in response to the street protests.

3.     On May 30, 2020, at approximately 9:30 p.m., federal agents from the United States Park Police, Military Police, and other federal agents were positioned in and around Lafayette Square.  Demonstrators were gathered in the area to protest Mr. Floyd's killing. In spite of the largely peaceful protest, the federal agents fired rubber bullets, tear gas, "pepper balls," and other less-lethal projectiles and chemical irritants into the crowd.  The individual United States Park Police Officers named in this Complaint participated in this conduct, on behalf of Defendant the United States, which was tortious and violated the Plaintiffs' Fourth Amendment and other constitutional rights, in both their official and individual capacities. MPD, acting on behalf of Defendant the District of Columbia, formed a perimeter around the area, blocking surrounding streets so as to force protestors into a constricted area ("a kettle") from which they could not leave.  Protestors, including people injured, were locked into the area by the "District Defendants," *see infra* ¶¶ 13-17*,* and not allowed to leave.  The individual District of Columbia law enforcement officers named as defendants in this action participated directly in this conduct, in both their official and personal capacities.

4.     Plaintiffs Daphne Bolotas and Electra Bolotas are sisters. Plaintiff Luz Del Carmen Salama-Tobar is a close friend of both Daphne and Electra Bolotas.  Plaintiffs are ordinary citizens— one working as an independent photojournalist, another a preschool teacher, and the third a high school teacher.  Plaintiffs came to the District of Columbia on May 30, 2020,

to protest racial injustice and the death of George Floyd. Each of them suffered one or more of the constitutional, statutory, and common law violations described here. Each suffered severe physical and emotional injuries on May 30, 2020 directly related to and proximately caused by the constitutional violations that were inflicted upon them.

5.      Plaintiff Salama-Tobar did not participate in any acts of vandalism or other unlawful acts. Her attendance at the demonstration on May 30, 2020 was primarily as an observer, taking photos of the events unfolding around her. Plaintiffs Daphne and Electra Bolotas did not participate in any acts of vandalism or other unlawful acts. Shortly after their arrival in and around Lafayette Square, federal law enforcement officers, including those named as individual defendants in this action, fired projectiles, including pepper balls and tear gas cannisters, into the crowd without justification and without warning.

6.      USPP Officer Sheldon Thorpe approached Plaintiff Electra Bolotas and struck her on the head with his baton without justification or warning. Officer Thorpe next targeted Plaintiff Daphne Bolotas, pushing her to the ground without legal justification. At least one of the United States Park Police officers named as individual defendants in this action fired one or more rubber bullets, pepper balls and/or similar less-lethal projectiles that struck Plaintiff Salama-Tobar in the left eye as she was taking pictures of the events. These same officers, along with John Does 1-50, individuals who are, on information and belief, federal law enforcement officers, fired tear gas canisters, rubber bullets, pepper balls and other less-lethal projectiles that struck both Daphne and Electra Bolotas, as they lay on the ground immediately after being injured by Officer Thorpe.

7.      At least the five USPP officers named as individual defendants in this action, excluding Officer Sheldon Thorpe, have been identified to Plaintiffs as law enforcement officers

who discharged weapons in or around the location, and during the time period, at issue in this case. Counsel for the United States has proffered to Plaintiffs' counsel that none of these individuals admits firing the projectile that injured Ms. Salama-Tobar. We are uncertain at this time which of these individuals fired the shot that caused her injury. On information and belief, the projectile that hit Ms. Salama-Tobar was a "pepper ball," though the precise nature of the projectile used is still being investigated. Further, it is our understanding that a three-year statute of limitations will apply to the claims asserted in this case. However, given the risk that a one-year limitations period might be deemed applicable, we submitted our First Amended Complaint on May 29, 2021. In it, and in this Second Amended Complaint, we assert that each of these USPP officers, fired the projectile in question, given that we know that each of them fired a projectile in or around the relevant location during the relevant time period.

8. The Plaintiffs were detained and kettled for approximately two hours by, *inter alia,* Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and John Does 51-100, all members of the MPD, preventing Plaintiffs from seeking medical aid for their injuries. Plaintiff Salama-Tobar was blinded and in excruciating pain from the projectile still lodged in her eye. Plaintiff Daphne Bolotas' arm was in extreme pain, as a direct and proximate result of the assault by Officer Thorpe. Plaintiff Electra Bolotas was disoriented and suffering from a head injury, as a direct and proximate result of the assault by Officer Thorpe. Despite their obvious and serious injuries, Plaintiffs were detained by MPD officers and kept in a kettle for approximately two hours. Their pleas to leave in order to seek medical attention were ignored.

9.      As a direct result of the above-described constitutional violations by Defendants, Plaintiffs should be awarded appropriate compensation for the injures they sustained.  Plaintiffs seek both compensatory and punitive damages for Defendants' egregious and illegal conduct.

## PARTIES AND RELEVANT INDIVIDUALS

### Plaintiffs

10.      Plaintiff Luz Del Carmen Salama-Tobar is a professional photographer and Fulbright Scholar from Temple Hills, Maryland.  Ms. Salama-Tobar was blinded in her left eye as a result of being shot in the eye with a projectile on May 30, 2020.  This projectile, on information and belief, was fired by one of the USPP officers named as a defendant in this Second Amended Complaint.  She may never fully regain her vision.

11.      Plaintiff Daphne Bolotas is a preschool teacher from Falls Church, Virginia.  Ms. Bolotas' wrist was broken when she was forcefully pushed to the ground by USPP Officer Sheldon Thorpe on May 30, 2020.

12.      Plaintiff Electra Bolotas is a high school teacher from Washington, D.C.  Ms. Bolotas suffered a head injury when she was struck on the head with a baton by USPP Officer Sheldon Thrope on May 30, 2020.

### District Defendants

13.      Defendant District of Columbia, a municipal corporation, is the local government of Washington D.C.  It operates and governs the MPD pursuant to the laws of the District of Columbia. In this case, the District of Columbia and the MPD acted through their agents, employees, and servants named as individual defendants herein, and through other officers and employees not specifically named as defendants, all of whom were acting within the scope and in furtherance of their employment.

14.     At all relevant times, Defendant Peter Newsham was the Chief of Police for the MPD.  He is sued in his official and individual capacities.  In his official capacity, he is responsible for the actions of the Metropolitan Police Department Officers named and otherwise referenced in this Complaint.

15.     Defendants Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, are law enforcement officers employed by the MPD.  They are agents of the District of Columbia, who authorized, planned, or participated in the kettle, and/or unconstitutional detention of Plaintiffs on May 30, 2020.  In so doing, they acted both in their official and individual capacities.

16.     Defendants 51-100 are members of the Metropolitan Police Department, agents of the District of Columbia, who authorized, planned, or participated in the kettle, and/or unconstitutional detention of Plaintiffs on May 30, 2020.

***Federal Defendants***

17.     Defendant Sheldon Thorpe is a federal law enforcement officer employed by the United States Park Police.  He is sued in his official and individual capacities.

18.     Defendant Wayne Humberson is a federal law enforcement officer employed by the United States Park Police.  He is sued in his official and individual capacities.

19.     Defendant Jared Tyng is a federal law enforcement officer employed by the United States Park Police.  He is sued in his official and individual capacities.

20.     Defendant Daniel Glendenning is a federal law enforcement officer employed by the United States Park Police.  He is sued in his official and individual capacities.

21.     Defendant Pedro Rancier is a federal law enforcement officer employed by the United States Park Police.  He is sued in his official and individual capacities.

22.     Defendant Andrew Lauro is a federal law enforcement officer employed by the United States Park Police.  He is sued in his official and individual capacities.

23.     Defendants John Does 1-50 are officers of the United States Park Police, agents of the United States Secret Service, members of the United States Armed Forces, agents of the Federal Bureau of Prisons, and officers of other federal law enforcement agencies or other federal government officials who authorized, planned or participated in the attack on protestors in and near Lafayette Square on May 30, 2020.

24.     The United States of America is sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Section 1346 *et seq.*  The administrative notices required by the FTCA have been provided to the government but have not yet been adjudicated by it.

25.     The United States Department of the Interior, the United States National Park Service, and the United States Park Police are agencies and instrumentalities of the United States government.

## JURISDICTION AND VENUE

26.     The Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because Plaintiffs' claims arise, in substantial part, under the United States Constitution. Further, the United States and its employees are defendants herein.  Plaintiffs' claims against the District of Columbia and its agents are asserted pursuant to 42 U.S.C. § 1983.  Plaintiffs' claims against the individual federal officers named herein are asserted pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act.  Plaintiffs' claims under the statutory and common law of the District

of Columbia arise from the same events as the constitutional claims and are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

27.     Venue is proper in this District under 28 U.S.C. §1391(e)(1) because all the events giving rise to the claims took place in the District of Columbia.

28.     Timely notice was provided of these claims to the District of Columbia pursuant to D.C. Code Section 12-309.  With respect to the Federal Tort Claims Act, SF-95 forms were sent to the United States Park Police, the Department of the Interior and the National Park Service on or around October 5, 2020.  On information and belief, they were received on or around October 21, 2020.

## FACTS

### *Luz Del Carmen Salama-Tobar, Daphne and Electra Bolotas Attend the Protest*

29.     On the evening of May 30, 2020, at approximately 9:00 p.m., Plaintiffs drove to the District of Columbia.  They walked from their car parked on 17th St. NW and M St. NW, to an area near St. John's Episcopal Church at 1525 H St. NW in Washington D.C.  With the church to their backs, the women stood on H St. NW, facing Lafayette Square, where a group of federal officers, most dressed in riot gear, were standing in Lafayette Square behind a row of metal column barriers connected by a metal chain.

30.     The majority of the officers were dressed in either light blue uniforms, green military style fatigues, or in all black tactical clothing.  Many of the officers carried clear shields with either the words "Police", "Military Police" or "U.S. Park Police" written across the front.

31.     Ms. Salama-Tobar, equipped with a professional grade camera, was taking pictures while Daphne and Electra Bolotas participated in the protest.

32.     Protestors, including Plaintiffs, were standing on H Street N.W., separated from the police officers in Lafayette Square by an elevated sidewalk and the chain linked metal columns.

33.     When Plaintiffs arrived at the protest, it was a largely peaceful gathering.

### *The Police Assault on the Lafayette Square Protestors*

34.     Shortly after the Plaintiffs' arrival, without warning or provocation, law enforcement officers fired tear gas, pepper balls and less-lethal projectiles into the crowd of protestors. Almost simultaneously, USPP Officer Thorpe, carrying a shield with the word "Police," stepped over the chain barrier and walked out into the street toward Electra Bolotas. Officer Thorpe violently struck Electra Bolotas on the head with his baton. Officer Thorpe then forcefully pushed Daphne Bolotas to the ground.

35.     Electra Bolotas grabbed her head and collapsed to the ground in pain. While on the ground, she felt a tear gas cannister or similar less-lethal projectile hit the side of her body.

36.     After Officer Thorpe pushed Daphne Bolotas. She was unable to break her fall and landed directly on her wrist. While lying on the ground, she was struck in the shoulder with a tear gas cannister. Her wrist was broken during this encounter with Defendant Thorpe.

37.     At the same time, Ms. Salama-Tobar was taking pictures of the protest in a stationary position close to Electra and Daphne Bolotas on H St. N.W., in the District of Columbia. One or more of the USPP officers or officials named as individual defendants in this action, including John Does 1-50, fired one or more rubber bullets or similar less-lethal projectiles, one of which hit Ms. Salama-Tobar in the left eye. She grasped her eye and fell to the ground in pain as blood from her eye ran down her face.

38.     Each of the Plaintiffs also experienced pain and other discomfort as a result of chemicals deployed by the Federal Defendants.

39.     The tear gas canisters and less-lethal projectiles that struck Plaintiffs were fired by the Federal Defendants, including the USPP Officers individually named herein, maliciously, knowingly, wrongfully, with intent to injure, negligently, grossly negligently, recklessly, without legal justification and without proper regard for the safety of the Plaintiffs.  Plaintiffs allege that the Federal Defendants acted intentionally, and, in the alternative, with gross negligence and ordinary negligence in firing projectiles indiscriminately into a crowd and in a manner that is contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers.

40.     During the assault, Plaintiffs were never given a directive to disperse.

### The Aftermath

41.     A nearby medic, M.J., witnessed the injury to Ms. Salma-Tobar.  M.J. directed Ms. Salma-Tobar to a makeshift clinic that had been established in front of St. John's Episcopal Church.  M.J. called 911, and requested an ambulance and applied ointment and pressure to Ms. Salama-Tobar's eye in an attempt to stop the bleeding.

42.     M.J. accompanied Ms. Salama-Tobar as the two walked northbound on 16th St. N.W. to wait for the ambulance.

43.     Daphne Bolotas was helped off the ground by a fellow protestor and walked to St. John's Episcopal Church.  There, a medic helped put her arm in a sling.

44.     Electra Bolotas, disoriented from the blow to her head, was briefly separated from the other two Plaintiffs.

45.     The Plaintiffs reunited on 16th St. NW, approximately one block north from where they were injured, and waited for the ambulance to arrive to transport them to the hospital.

46.     The Plaintiffs were in pain from their respective injuries.  The chemical irritants used by the Federal Defendants caused Plaintiffs varying levels of discomfort, including, but not limited to difficulty breathing and a burning sensation in their eyes and throat.

### *The Kettle*

47.     Following the attack by the Federal Defendants, the MPD established police lines with officers standing shoulder-to-shoulder across H, I, and K Streets, NW, at or near 16th Street, NW, and across 16th Street, NW near K Street, forming a kettle from which the Plaintiffs were unable to extricate themselves for a substantial period of time after their injuries, exceeding an hour.

48.     The named MPD officers and Does 51-100 jointly established a line of officers on or around 16th St. NW and refused to let Plaintiffs leave to seek medical attention for their injuries.

49.     Plaintiffs were detained in a number of intersecting police lines, comprising a "kettle," on and around 16th Street, Northwest, and were prevented from seeking immediate medical attention for their acute and serious injuries.

50.     Plaintiffs attempted to travel northbound on 16th St. NW to get medical assistance, but they were unable to leave the kettle.

51.     The MPD blocked alternative routes of egress in all directions on H St. NW, I St. NW, and K St. NW, including through mid-block alleyways.

52.     The line of MPD officers on K St. NW advanced southbound on 16th St. NW, pushing all persons on 16th St. NW, including Plaintiffs, still detained in the kettle, back in the direction of Lafayette Square.

53.     As the kettle continued to move southbound, Plaintiffs continually attempted to seek permission from the MPD officers to leave the kettle to seek medical attention.

54.     The ambulance that had been dispatched for Ms. Salama-Tobar could not reach their location due to the police blockade of 16th St. NW and the surrounding streets.

55.     The pain from each of Plaintiffs' respective injuries, particularly Ms. Salama-Tobar's eye injury, worsened during the prolonged wait in the MPD kettle without medical assistance.

56.     If Ms. Salama-Tobar had obtained medical assistance sooner, the continuing disability resulting from her eye injury would be less severe.

57.     MPD finally allowed Ms. Salama-Tobar and the medic to leave the kettle approximately ninety minutes after she first requested permission.

58.     After Ms. Salama-Tobar was allowed to leave the kettle to seek medical assistance, Daphne and Electra Bolotas continued to request permission from MPD officers to leave the kettle in order to seek medical attention for their injuries. MPD officers physically pushed Daphne and Electra Bolotas back into the kettle after they repeatedly requested permission to leave the kettle, thereby denying them permission to leave and seek medical assistance.

59.     Eventually, MPD officers allowed Daphne and Electra Bolotas to leave the kettle after they had been detained for nearly two hours.

60. The District Defendants were not permitted to use police lines in this circumstance, violating the Standard Operating Procedures for Handling First Amendment Assemblies and Mass Demonstrations.[1] That policy does not allow MPD officers "to encircle demonstrators unless it is necessary for their protection or a decision has been made to arrest those participants that are being isolated."[2]

61. Furthermore, "a police line shall not substantially encircle a First Amendment assembly except where there is probable cause to arrest a significant number or percentage of the persons located in the area of the assembly for unlawful acts, other than failing to have an approved assembly or plan or for the safety of First Amendment assembly participants."[3]

62. The District Defendants did not have probable cause to kettle Plaintiffs and other protestors because there were no unlawful acts committed by the Plaintiffs and other protestors.

63. Defendants Peter Newsham and Chief Carroll authorized the MPD officers' use of force to kettle and encircle Plaintiffs in violation of the Fourth Amendment and the District of Columbia's codified policies and procedures. On information and belief, however, the conduct alleged herein reflects an established pattern and practice by the District Defendants in seeking unlawful control over the movement of demonstrators.

64. The remaining MPD Defendants formed the line that prevented Plaintiffs' movement and resulted in the kettling.

65. The District of Columbia, acting through its MPD, has a policy and practice of kettling protestors in violation of the Standard Operating Procedures for Handling First

---

[1] https://go.mpdconline.com/GO/SOP_16_01.pdf
[2] https://go.mpdconline.com/GO/SOP_16_01.pdf
[3] *Id.* at 73.

Amendment Assemblies and Mass Demonstrations, as they kettled Black Lives Matter protestors on or about June 1, 2020.[4]

66.     Plaintiffs were detained in the kettle without probable cause, simply because they exercised their protected First Amendment right to participate in the protest near Lafayette Square.

### *Ms. Salama-Tobar's Medical Condition*

67.     The projectile that struck Ms. Salama-Tobar's left eye was removed by medical personnel at the hospital early the next morning on June 1, 2020.  Doctors informed Ms. Salama-Tobar that she may never fully regain her vision as a result of the injury.

68.     Below is an image of Ms. Salama-Tobar shortly after she was shot in the eye.

---

[4] https://www.wusa9.com/article/news/politics/march-on-washington/kettled-swann-street-protests-militarization-of-police-george-floyd-dc-police-mpd/65-973a7c0f-ac23-46e4-8437-aad8355919e0



69.     Ms. Salama-Tobar has not fully regained vision in her left eye.  She has suffered from severe migraine headaches and undergone surgery since May 30, 2020.

70.     The projectile that struck Ms. Salma-Tobar caused a macular hole and choroidal rupture in her left eye and lacerated her left eyelid.  Ms. Salma-Tobar has not fully regained her vision out of her left eye.  It is likely that she will never fully regain vision.

### Ms. Salama-Tobar's Future

71.     Ms. Salama-Tobar's life has been upended.  Prior to being injured, Ms. Salama-Tobar was studying and working in El Salvador on a Fulbright Scholarship for photography.  She has been unable to work in her chosen field of photography because half of her field of vison is

now gone.  Ms. Salama-Tobar fears that she will no longer be able to effectively function as a professional photographer.

72.     Ms. Salama-Tobar has participated in therapy to help her cope with her new reality and the physical and emotional trauma caused on May 30, 2020.

73.     Ms. Salama-Tobar continues to suffer from feelings of depression and anxiety due to being injured at the protest.

74.     Ms. Salama-Tobar's eye injury will have a long-term effect on her dependents. Ms. Salama-Tobar lost her mother to COVID-19 in the Spring of 2020.  After her mother's death, she became the primary financial support system for her younger sibling, who also may need therapy to cope with her sister's injury.

### *Daphne Bolotas' Medical Condition*

75.     Daphne Bolotas' wrist was broken during her violent encounter with Defendant Thorpe.  On June 10, 2020, she had surgery to repair a Colles' fracture in her left wrist.

76.     Her road to recovery has been difficult.  As of November 2021, Ms. Bolotas' wrist remains swollen, is numb on occasion, and she has not regained full range of motion in the wrist.

77.     Daphne Bolotas was struck by tear gas canisters, rubber bullets, and other less-lethal projectiles fired by John Does Defendants 1-50.  This caused her to suffer severe pain and fear.

78.     Daphne Bolotas has participated in therapy to help her cope with the emotional trauma and suffering she has experienced since attending the protest.

79.     Below is a picture of the shirt Ms. Bolotas was wearing during the protest, marked with residue from a tear gas cannister or similar projectile.



***Daphne Bolotas' Future***

80.     Daphne Bolotas continues to suffer from feelings of depression and anxiety due to being injured at the protest.

81.     Being assaulted by Office Thorpe and John Does 1-50 has deeply traumatized Daphne Bolotas. Ms. Bolotas is concerned that she will be subjected to further violence by law enforcement if she exercises her constitutional rights in the future.

***Electra Bolotas' Medical Condition***

82.     Electra Bolotas was diagnosed with a concussion after being hit over the head with a baton by Defendant Thorpe.

83.     In the days after the assault, she suffered from severe migraine headaches.

84.     Electra Bolotas was struck by tear gas canisters, rubber bullets, and other less-lethal projectiles fired by John Does Defendants 1-50.  This caused her to suffer severe pain and fear.

85.     Electra Bolotas has participated in therapy to help her cope with the emotional trauma she has experienced since attending the protest.

86.     Below is a picture of Electra Bolotas' head injury, where she was struck by Officer Thorpe with a baton.



***Electra Bolotas' Future***

87.      Electra Bolotas continues to suffer from feelings of depression and anxiety due to her experience at the protest on May 30, 2020.

88.     Being assaulted by Office Thorpe and John Does 1-50 has deeply traumatized Electra Bolotas.  Ms. Bolotas is concerned that she will be subjected to further violence by law enforcement if she exercises her constitutional rights in the future.

*Notice of Claims*

89.     Plaintiffs have timely given notice in writing to the Mayor of the District of Columbia of the "approximate time, place cause and circumstances" of their injuries, pursuant to D.C. Code §12-309. The Notice of Claim Letter for Daphne Bolotas was mailed via certified mail to the D.C. Office of Risk Management on October 15, 2020. The Notice of Claim Letters for Electra Bolotas and Luz Del Carmen Salama-Tobar were mailed via certified mail on October 16, 2020.  On or around October 26, 2020, the District acknowledged receipt of each letter.

90.     Plaintiffs have timely given notice to the USPP regarding the time, place, and nature of their injuries through a Standard Form 95 ("SF-95") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 *et seq.*  2671-2680.  Daphne Bolotas, Electra Bolotas, and Luz Del Carmen Salama-Tobar's SF-95 Forms were mailed via certified on October 5, 2020.  On or around October 21, 2020, USPP received the forms via certified mail.  Assistant United States Attorney Christopher Hair confirmed receipt of each form to Plaintiffs' counsel on or around September 15, 2021.

## CLAIMS FOR RELIEF

**Count 1: Right to Free Speech and Expression**
**Violation of the First Amendment to the Constitution of the United States**
**Pursuant to 42 U.S.C. § 1983**
**(Plaintiffs v.  Defendants John Does 51-100, Peter Newsham, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and the District of Columbia)**

91.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

92.     The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

93.     The First Amendment prohibits "restrict[ing] express because of [expression's] message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 572 (2002)

94.     Although a municipality may place reasonable time, place, and manner restrictions on speech in a public forum, those restrictions must be content neutral and narrowly tailored to serve a significant government interest. *Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1390 (D.C. Cir. 1990).

95.     Activities such as demonstrators, protest marches, and picketing are protected by the First Amendment. *Terry v. Reno*, 101 F.3d 1412, 1421-22 (D.C. Cir. 1996).

96.     Defendants acting under color of law, have caused and will cause Plaintiffs to be deprived of their constitutional rights in violation of 42 U.S.C. § 1983.

97.     Because peaceful protests in public forums constitute protected speech, police tactics which cause physical harm and pose physical threats to demonstrators have the effect of preventing Plaintiffs from engaging in such protests in violation of the First Amendment.

98.     All of the District Defendants identified in this Complaint violated Plaintiffs' right to free speech by arresting and/or detaining them inside the kettle and preventing them from leaving the kettle to seek medical attention for their respective injuries, and otherwise deterring Plaintiffs from engaging in their constitutionally protected right to express their views through peaceful protest.

99. As a direct and proximate cause of Defendants' violations of the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in the amount subject to proof. Due to Defendants' actions, Plaintiffs have suffered and will continue to suffer depression, anxiety, severe mental or physical pain and/or anguish of mind and are unable to transact in their usual business and enjoyment.

100. Plaintiffs are entitled to monetary and compensatory damages from Defendants.

101. Plaintiffs are entitled to punitive damages from Defendant Officers due to Defendants' reckless or callous indifference to the federally protected rights of Plaintiffs.

**Count 2: Excessive Force; Unlawful Seizure, Assault, Battery**
**Violation of Fourth Amendment to the Constitution of the United States and Fifth Amendment Right to Due Process**
**Pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)**
**(Plaintiffs Electra and Daphne Bolotas v. Defendants John Does 1-50, Officer Sheldon Thorpe, Detective Wayne Humberson, Officer Jared Tyng, Officer Daniel Glendenning, Officer Pedro Rancier, and/or Officer Andrew Lauro, and all individual employees of the USPP named as Defendants)**

102. Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

103. The Fourth Amendment to the United States Constitution provides "the right of the people to secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. Amend. IV. The Fifth Amendment protects against violations of substantive due process.

104. The actions of Defendants John Does 1-50, Officer Sheldon Thorpe, Detective Wayne Humberson, Officer Jared Tyng, Officer Daniel Glendenning, Officer Pedro Rancier, Officer Andrew Lauro, action (the "USPP Individual Defendants") violated Plaintiffs Daphne and Electra Bolotas' rights to be free from unreasonable searches and seizures under the Fourth

Amendment to the United States Constitution, and to substantive due process under the Fifth Amendment.

105.    Plaintiffs were seized by Defendants and had their rights to due process infringed upon when they intentionally, through the use of force and threat of arrest, and by using weapons, including, but not limited to, tear gas canisters, rubber bullets, pepper balls, and other less-lethal projectiles, terminated their freedom of movement, and when they were assaulted by Officer Thorpe.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).

106.    Defendants used excessive force in violation of Plaintiffs' Fourth Amendment rights when they deliberately targeted and shot projectiles, including tear gas canisters, rubber bullets, and other less-lethal projectiles at the crowd of peaceful protestors – including Plaintiffs Daphne and Electra Bolotas – on May 30, 2020, without warning.  And they used excessive force and violated the constitutional rights identified herein when Officer Thorpe assaulted Daphne and Electra Bolotas as described herein.

107.    In the alternative, Plaintiffs allege that the individual Federal Defendants identified in this Count acted recklessly, with gross negligence and with ordinary negligence by firing less-lethal projectiles indiscriminately into a crowd and in a manner that is contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers, and when Officer Thorpe assaulted the Bolotas sisters.

108.    At all relevant times, Defendants named in this Count were either light blue uniforms, green military style fatigues, or in all black tactical clothing.  Many of the officers carried clear shields with either the words "Police", "Military Police" or "U.S. Park Police" written across the front.

109. Defendant Sheldon Thorpe used excessive force when he approached Plaintiff Electra Bolotas and struck her on the head with his baton without justification or warning, causing her to suffer a concussion.

110. Defendant Sheldon Thorpe used excessive force when he pushed Plaintiff Daphne Bolotas to the ground without justification, causing her to suffer a broken wrist.

111. After Defendant Thorpe used excessive force and pushed both Plaintiffs Daphne and Electra Bolotas to the ground, Defendants John Doe 1-50 threw tear gas canisters into the crowd, hitting Electra Bolotas' side of her body and Daphne Bolotas' shoulder.

112. The chemical irritants from the tear gas cannisters caused Plaintiffs' difficulty breathing and a burning sensation in their eyes and throat.

113. Defendants are jointly and severally liable to Plaintiffs for their actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for their violation of their constitutional rights and the resulting harm.

114. As a direct and proximate cause of Defendants' violations of the Fourth Amendment, Plaintiffs suffered and are suffering and will continue to suffer, physical and mental pain.

115. Defendant Officers are liable to Plaintiffs for punitive damages. They acted with reckless or callous indifference to the federally protected rights of Plaintiffs.

**Count 3: Excessive Force/Assault/Negligence**
**Violation of Fourth Amendment to the Constitution of the United States and Fifth Amendment Right to Substantive Due Process**
**Pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)**
**(Plaintiff Luz Del Carmen Salama-Tobar v. Defendants John Does 1-50, Officer Sheldon Thorpe, Detective Wayne Humberson, Officer Jared Tyng, Officer Daniel Glendenning, Officer Pedro Rancier, and/or Officer Andrew Lauro, and all individual employees of the USPP named as Defendants)**

116.    Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

117.    The Fourth Amendment to the United States Constitution provides "the right of the people to secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. Amend. IV.   The Fifth Amendment protects against infringements against the right to substantive due process.

118.    The actions of Defendants John Does 1-50, Detective Wayne Humberson, Officer Jared Tyng, Officer Daniel Glendenning, Officer Pedro Rancier, Officer Andrew Lauro, action (the "USPP Individual Defendants") violated Plaintiffs' rights to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, and their right to substantive due process guaranteed by the Fifth  Amendment, when they engaged in conduct resulting in the shooting of Plaintiff Luz Del Carmen Salama-Tobar with a projectile.

119.    Plaintiffs were seized by Defendants, and their right to substantive due process was violated, when they intentionally, through the use of force and threat of arrest, and by using weapons, including, but not limited to, tear gas canisters, rubber bullets, pepper balls, and other less-lethal projectiles, terminated their freedom of movement.  *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998), and when Plaintiff Luz Del Carmen Salama-Tobar was shot with a projectile.

120.    Defendants used excessive force in violation of Plaintiffs' Fourth Amendment rights, and assaulted Plaintiffs in violation of their constitutional rights, when they deliberately targeted and shot projectiles, including tear gas canisters, rubber bullets, and other less-lethal projectiles at the crowd of peaceful protestors – including Plaintiff Salama-Tobar– on May 30, 2020, without warning,

121.    In the alternative, Plaintiff alleges that the individual Federal Defendants identified in this Count acted recklessly, with gross negligence and with ordinary negligence by firing less-lethal projectiles indiscriminately into a crowd and in a manner that is contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers, resulting in the shooting of Plaintiff Luz Del Carmen Salama-Tobar with a projectile.

122.    At all relevant times, Defendants named in this Count were either light blue uniforms, green military style fatigues, or in all black tactical clothing.  Many of the officers carried clear shields with either the words "Police", "Military Police" or "U.S. Park Police" written across the front.

123.    Defendants' actions violated Plaintiff Salama-Tobar's right to be free from unreasonable searches and seizures under the Fourth Amendment, and her right to substantive due process under the  Fifth Amendment, when USPP Individual Officers affirmatively fired one or more rubber bullets, pepper balls and/or similar less-lethal projectiles that struck Plaintiff Salama-Tobar in the left eye.

124.    After Defendants' projectile struck Plaintiff Salama-Tobar in the left eye, she grasped her eye and fell to the ground in pain as blood from her eye ran down her face.

125.    Plaintiff Salama-Tobar was a peaceful protestor and observer who was taking photographs of the events and did not pose a threat to law enforcement or public safety. Defendants fired the projectiles into the crowd without warning.

126.    Defendants are jointly and severally liable to Plaintiff Salama-Tobar for their actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for their violation of her constitutional rights and the resulting harm.

127.    As a direct and proximate cause of Defendants' violations of the Fourth and Fifth Amendments, Plaintiff Salama-Tobar suffered and is suffering and will continue to suffer, physical and mental pain.

128.    Defendant Officers are liable to Plaintiff Salama-Tobar for punitive damages. They acted with reckless or callous indifference to the federally protected rights of Plaintiff.

**Count 4: Excessive Force**
**Violation of Fourth Amendment to the Constitution of the United States**
**Pursuant to 42 U.S.C. § 1983**
**(Plaintiffs v.  Defendants John Does 51-100, Peter Newsham, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and the District of Columbia)**

129.    Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

130.    The actions of Defendants the District of Columbia, John Does 51-100, Peter Newsham, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and all other District of Columbia Metropolitan Police Department employees that participated in this conduct, namely the arrest and detention of Plaintiffs inside the kettle, without a warrant or probable cause, violated the rights of Plaintiffs under the Fourth Amendment to the United States Constitution.

131.    Plaintiffs were seized by above Defendants when they arrested and detained Plaintiffs inside the kettle, terminating their freedom of movement

132.    Plaintiffs did not commit a crime or pose a threat to Defendants through their peaceful protest.

133.    Defendants acted under color of law and violated Plaintiffs' right to be free from unlawful searches and seizures as guaranteed by the Fourth Amendment.

134. Defendant District of Columbia is liable because at all relevant times it was responsible for making and enforcing policies with respect to the MPD Officer Defendants' use of force.

135. Defendant Newsham is liable because as the Chief of the Police for MPD at the relevant time, he was responsible for authorizing the officer's use of force to kettle and encircle Plaintiffs and other protestors.

136. Defendants are not immune for liability to remedy their patently unconstitutional conduct, which is prohibited by clearly established governing law *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (a seizure occurs from the "governmental termination of freedom through movement through means intentionally applied"); *Marbet v. City of Portland*, 2003 U.S. Dist. LEXIS 25685 at *27-28 (physically moving and circumscribing areas of movement of plaintiffs constituted a seizure within the meaning of the Fourth Amendment).

137. The actions of the above-named Defendants resulted from the District of Columbia's failure to train or supervise MPD officers regarding appropriate circumstances to detain and kettle Plaintiffs as outlined in the Standard Operating Procedures, demonstrating a deliberate indifference to Plaintiffs' constitutional right to be free from unreasonable seizures.

138. By their deliberate indifference to the policies, trainings, supervision, and discipline needed to prevent law enforcement officers from using excessive force in circumstances such as protests as described in the MPD Standard Operating Procedures, Defendants John Does 51-100, former Chief Peter Newsham, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and

Officer Nicholas Imbrenda, and the District of Columbia caused the deprivation of civil rights and injuries to Plaintiffs and thereby violated the Fourth Amendment.

139.     As described herein, the actions of Defendant District of Columbia and its employees named and otherwise referenced herein, who were acting within the scope and in furtherance of their employment, were taken via deliberate action by the District of Columbia, and with deliberate indifference to its consequences in violating the Plaintiffs' constitutional rights.   The District of Columbia failed to appropriately train its officers to respect the constitutional rights of protesters like the Plaintiffs.   This failure to appropriately train MPD officers directly and proximately caused the deliberate indifference of the offices named and otherwise referenced herein to Plaintiffs' constitutional rights, and their intentional infringement of those rights.   This was both an implicit custom and policy in the District of Columbia and its Metropolitan Police Department.   Accordingly, the conduct alleged herein reflects the official policy of the District of Columbia, and this policy was the moving force behind the constitutional violations alleged herein.

**Count 5: First Amendment Assemblies Act (Kettling)**
**Under D.C. Code § 5-331.01, *et seq.***
**(Plaintiffs v. Defendants John Does 51-100, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, and the District of Columbia)**

140.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

141.     The actions of Defendants John Does 51-100, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, the District of Columbia, Defendant Newsham, and all other individual employees of the MPD that participated in the wrongful conduct alleged in the

Complaint, namely ordering the kettling and detaining Plaintiffs therein violated the rights of Plaintiffs under the First Amendment Assemblies Act (D.C. Code §5-331.01, *et seq*.).

142.    D.C. Code § 5-331.08 allows MPD to use a police line to encircle, or substantially encircle, a First Amendment Assembly only "where there is probable cause to believe that a significant number or percentage of the persons located in the area or zone have committed unlawful acts . . . and the police have the ability to identify those individuals and have decided to arrest them."

143.    These Defendants did not have probable cause to believe that a significant number or percentage of the persons located in the area or zone encompassed by the kettle had committed unlawful acts.  Even if such probable cause existed, the Defendants either did not have the ability to identify the persons who had committed unlawful acts, or had not decided to arrest such persons, or both.

144.    Plaintiffs did not commit any unlawful acts before or during their detention in the kettle, nor has it ever been alleged that they did so.

145.    These Defendants did not use the police lines to encircle the protest for the safety of the protesters. There was no threat to the protesters' safety coming from outside the kettle.

146.    The District Defendants identified in this Complaint are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by being detained in the kettle, and the individual Defendants are liable to the Plaintiffs for punitive damages.

147.    Defendant District of Columbia is liable under the doctrine of respondeat superior for the damages inflicted by these Defendants who were its agents while acting within the scope of their employment as MPD officers and on behalf of and in the interests of their employer.

**Count 6: Negligence Per Se**

**(Plaintiffs v. Defendants John Does 51-100, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, District of Columbia)**

148.    Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

149.    The First Amendment Assemblies Act is a statute intended to protect people from being encircled and detained by police unless there is probable cause to believe that a significant number or percentage of individuals have committed unlawful acts, and the police can identify and arrest those individuals.

150.    A negligence *per se* claim allows the plaintiff to "rely on a statute or regulation as proof of the applicable standard of care." *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997). "Violation of a statute or regulation may constitute negligence per se only 'if the statute is meant to promote safety, if the plaintiff is a member of the class to be protected by the statute, and if the defendant is a person upon whom the statute imposes specific duties.'" *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (citing *Ginsberg v. Granados*, 963 A.2d 1134, 1140 (D.C. 2009)

151.    The actions of Defendants John Does 51-100, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, the District of Columbia, and all other individual employees of the MPD that participated in the wrongful conduct alleged in the Complaint, namely ordering the kettling and detaining Plaintiffs therein, constituted negligence per se.

152.    The District Defendants identified in this Complaint are jointly and severally liable to Plaintiffs for the violation of their rights.

153.    Defendant District of Columbia is liable under the doctrine of respondeat superior for the damages inflicted by these Defendants who were its agents while acting within the scope of their employment as MPD officers and on behalf of and in the interests of their employer.

**Count 7: Federal Tort Claims Act**
**Under 28 U.S.C. § 1346**
**(Plaintiffs v. The United States of America, the United States Department of the Interior, the United States National Park Service, and the United States Park Police)**

154.    Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

155.    Pursuant to the Federal Tort Claims Act, 28 U.S.C. Section 1346, the United States of America, the United States Department of the Interior, the United States National Park Service, and the United States Park Police, and the individual United States Park Police officers named as defendants in this Complaint (the "Federal Defendants") are liable for the conduct alleged in this Complaint that was undertaken by the individual USPP officers named herein, all of whom were acting within the scope of and in furtherance of their employment. The Federal Defendants violated the Plaintiffs' constitutional rights as detailed above. These actions were done intentionally.

156.    In the alternative, Plaintiffs alleges that the Federal Defendants, including the United States, acting through their agents and employees, including the USPP officers named here as well as other USPP officers and employees, acted with recklessness, gross negligence and ordinary negligence by firing projectiles indiscriminately into a crowd in a manner that is contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers. In doing so, they failed to use ordinary care and violated the standard of care applicable to their conduct, directly and proximately damaging the Plaintiffs.

157.    Further, Officer Sheldon Thorpe's assaultive conduct alleged in this Complaint against Defendants Daphne and Electra Bolotas, was undertaken intentionally, and also grossly

negligently and with ordinary negligence, in that he applied excessive force to them without due and appropriate care.

158.     The named Federal Defendants committed the intentional torts of assault, assault with a dangerous weapon, battery, malicious wounding, maiming, gross negligence, ordinary negligence, intentional infliction of emotional distress and negligent infliction of emotional distress, as detailed in this Complaint.

### Count 8: Gross Negligence
### (Plaintiffs v. All Defendants)

159.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

160.     Gross negligence requires "an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful, and reckless disregard or conscious indifference for the rights and safety of others." *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997).

161.     The Federal Defendants, including the United States and the USPP Officers named as Defendants in this Complaint and other USPP officers and employees not yet identified, acted with gross negligence or negligence by assaulting the Plaintiffs using excessive and unreasonable force, and by firing projectiles indiscriminately into a crowd and in a manner that is contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers.

162.     As such, the Federal Defendants endangered Plaintiffs' lives by recklessly firing weapons onto the crowd and by using excessive force against the Plaintiffs.

163.     The Federal Defendants willfully fired a projectile or projectiles at Ms. Salama-Tobar, hitting her in the eye, causing permanent damage.

164.     Officer Sheldon Thorpe, with willful and with conscious indifference for Daphne and Electra Bolotas' safety, hit Electra Bolotas with a baton and pushed them both to the ground, causing Electra to suffer a concussion and Daphne to suffer a broken wrist.

165.     The District Defendants, including the MPD officers named in this action and other MPD officers not yet identified, acted with gross negligence or negligence by kettling and/or arresting Plaintiffs using excessive and unreasonable force, and refusing to allow them to seek medical attention, contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers.

166.     Both the Federal and District Defendants' behavior deviates from the ordinary standard of care police officers owe to the public.

167.     This grossly negligent behavior violated Plaintiffs' constitutional rights and creates both *Bivens* and FTCA liability against the Federal Defendants and 42 U.S.C. Section 1983 liability against the District Defendants.

### Count 9: Negligence
### (Plaintiffs v. All Defendants)

168.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

169.     To prevail on a negligence claim, a plaintiff must provide evidence that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty proximately caused damages to the plaintiff.  *Sullivan v. AboveNet Communs., Inc.*, 112 A.3d 347, 354 (D.C. 2015).

170.     The actions of both the Federal and District Defendants toward the Plaintiffs constituted negligence.

171.     Defendants owed a duty of care to Plaintiffs.  They had a duty to act reasonably and prudently under the circumstances.

172. The Federal Defendants breached this duty by engaging in the following activities: firing tear gas onto the crowd, striking Ms. Electra Bolotas' head with a baton, forcing Ms. Daphne Bolotas to the ground, and firing a projectile or projectiles at Ms. Salama-Tobar's eye.

173. The Federal Defendants acted with gross negligence or negligence by firing projectiles indiscriminately into a crowd and in a manner that is contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers.

174. After Plaintiff Electra Bolotas was forced to the ground, she felt a tear gas cannister or similar less-lethal projectile hit the side of her body.

175. While Plaintiff Daphne Bolotas was on the ground suffering a broken wrist, she felt a tear gas cannister hit her shoulder.

176. The District Defendants also breached their duties of care towards the Plaintiffs by engaging in the following activities: unlawfully detaining Plaintiffs in the kettle, preventing Plaintiffs from leaving the kettle to seek medical attention, worsening their respective injuries.

177. As a direct and proximate result of Defendants' actions, Plaintiffs experienced lasting injuries. All Defendants identified in this action are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by their negligence.

### Count 9: Intentional Infliction of Emotional Distress
### (Plaintiffs v. All Defendants)

178. Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

179. To assert a claim of intentional infliction of emotional distress, Plaintiffs "must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or

recklessly (3) causes the plaintiff severe emotional distress." *District of Columbia v. Tulin*, 994 A.2d 788, 800.

180.    All Defendants listed in the complaint engaged in extreme and outrageous conduct.

181.    The Federal Defendants struck Ms. Electra Bolotas' head with a baton, forced Ms. Daphne Bolotas to the ground, fired a projectile or projectiles at Ms. Salama-Tobar's eye, contrary to their training, applicable policies and procedures, and the training and instructions of the weapon manufacturers.

182.    The District Defendants, without justification, detained and kettled Plaintiffs against their will for over an hour, preventing them from obtaining medical assistance.

183.    The Defendants acted intentionally and recklessly, with disregard for Plaintiffs and other protestors' safety.

184.    As a result of the Defendants' actions, Plaintiffs suffered, are suffering and continue to suffer severe anxiety and depression due to their experiences at the protest on May 30, 2020.

185.    As a direct and proximate result of Defendants' actions, Plaintiffs experienced lasting injuries.  All Defendants identified in this action are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by their intentional infliction of emotional distress.

### Count 10: Negligent Infliction of Emotional Distress
### (Plaintiffs v. All Defendants)

186.    Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

187.    In the alternative to intentional infliction of emotional distress, Plaintiffs allege Defendants' grossly or ordinary negligent actions caused Plaintiffs' emotional distress.

188.     To assert a claim for negligent infliction of emotional distress, the plaintiff must show "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011).

189.     Defendants, as law enforcement officers, had a public duty to protect Plaintiffs.

190.     Due to Defendants' intentional, or in the alterative, negligent, or grossly negligent actions, including firing rubber bullets, pepper balls, tear gas canisters and/or other less-lethal projectiles, it is likely Plaintiffs would suffer serious emotional distress, including anxiety and depression.

191.     As a result of Defendants' actions, Plaintiffs suffered, are suffering, and will continue to suffer anxiety and depression due to their experiences at the protest on May 30, 2020.

192.     As a direct and proximate result of Defendants' actions, Plaintiffs experienced lasting injuries. All Defendants identified in this action are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by their intentional infliction of emotional distress.

### Count 12: Assault/Assault with a Dangerous or Deadly Weapon
### (Plaintiffs v. Defendants John Does 1-50, Defendant Officer Sheldon Thorpe, United States)

193.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

194.     Assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997).

195.     The actions of Defendants John Does 1-50 and Defendant Thorpe, and the United States, constituted assault and assault with a deadly weapon.

196.     Federal Defendants began firing tear gas and other less-lethal projectiles into the crowd of protestors without provocation or warning.

197.     Defendant Thorpe intentionally, recklessly, and negligently struck Plaintiff Electra Bolotas on the head with a baton and forced Plaintiff Daphne Bolotas to the ground.

198.     Defendant John Doe (USPP officer) fired a rubber bullet into Ms. Salama-Tobar's eye, causing her physical injuries that she has yet to recover.

199.     By using a baton, tear gas, and rubber bullets, Defendants engaged in assault with a deadly weapon, physically harming Plaintiffs.

200.     Defendant Thorpe's actions caused Plaintiffs physical harm.  Plaintiff Electra Bolotas suffered a concussion and Daphne Bolotas suffered a broken area.

201.     The United States Park Police officers named herein, and Defendant John Doe's actions, caused Plaintiff Salama-Tobar to lose vision in her left eye.

202.     The Defendants are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by the assault they committed upon Plaintiffs.  The United States is liable under the Federal Tort Claims Act for this conduct.

### Count 13: Battery
### (Plaintiffs v. Defendants John Does 1-50, Defendant Officer Sheldon Thorpe, and the United States)

203.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

204.     Battery "is an intentional act that causes a harmful or offensive bodily contact." *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997).

205.     The actions of Defendants John Does 1-50, the United States Park Police Officers named herein, Defendant Thorpe, and the United States, constituted battery.

206.     Federal Defendants intentionally fired tear gas into the crowd of protestors.

207.     Defendant Thorpe intentionally struck Plaintiff Electra Bolotas on the head with a baton and forced Plaintiff Daphne Bolotas to the ground.

208.     As a result of these intentional acts, Plaintiffs Electra and Daphne Bolotas experienced lasting injuries to their head and wrist, respectively.

209.     Defendant John Doe, a USPP officer, intentionally fired rubber bullets at Plaintiff Salama-Tobar, striking her in the eye.

210.     As a result, Plaintiff Salama-Tobar experienced lasting injury to her left eye.

211.     The Defendants are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by the battery they committed upon Plaintiffs.  The United States is liable under the Federal Tort Claims Act for this conduct.

**Count 14: False Arrest/False Imprisonment**
**(Plaintiffs v. Defendants John Does 51-100, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, District of Columbia)**

212.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

213.     Under D.C. law, the elements of false arrest or false imprisonment are "(1) detention or restraint against one's will within boundaries fixed by the defendant and (2) the unlawfulness of such restraint."  *Harris v. United States VA*, 776 F.3d 907, 911-12 (D.C. Cir. 2015).

214.     The District Defendants unlawfully detained Plaintiffs within the boundaries of the kettle.

215.    The boundaries of the kettle extended from Lafayette Square to 16ᵗʰ and K Streets NW, with MPD officers blocking all means of ingress and egress along H Street NW, I Street NW, and K Street NW.

216.    The Plaintiffs were unable to leave the kettle to seek medical attention for over an hour and a half.

217.    The District Defendants had no probable cause to kettle the Plaintiffs as there is no evidence unlawful conduct from the protestors or Plaintiffs prior to the kettle's formation.

218.    As a result of these intentional acts, Plaintiffs respective injuries were worsened due to the inability to seek medical attention.

219.    Accordingly, the Defendants are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by the false arrest they committed upon Plaintiffs.

**Count 15: Kidnapping**
**Under D.C. Code § 22-2001**
**(Plaintiffs v. Defendants John Does 51-100, Assistant Chief Jeffrey Carroll, Commander Robert Glover, Lieutenant Andrew Horos, Lieutenant Jason Bagshaw, Sergeant Daniel Thau, Sergeant Anthony Alioto, Officer Gregory Rock, Officer James Crisman, and Officer Nicholas Imbrenda, District of Columbia.)**

220.    Plaintiffs repeat and reallege all prior paragraphs of this Complaint.

221.    Under D.C. Code § 22-2001, kidnapping includes the seizing, confining, or detention of another with the intention to hold or detain such individual.   *Butler v. United States*, 614 A.2d 875, 884 (1992); D.C. Code § 22-2001.

222.    Through use of the kettle, the District Defendants seized, confined, and detained Plaintiffs for an extended period.

223.    The District Defendants intended to hold and detain Plaintiffs, demonstrated by their refusal to allow Plaintiffs to leave the kettle for over an hour and a half.

224.    As a result of the unlawful seizure, confinement and detention, Plaintiffs' injuries worsened.

225.    The Defendants are therefore jointly and severally liable to the Plaintiffs for their actual damages caused by the kidnapping they committed upon Plaintiffs.

## PRAYER FOR RELIEF

The Plaintiffs were directly and proximately damaged by the conduct alleged in this Complaint.  Accordingly, Plaintiffs request that this Court:

(a) RULE that Defendants' actions violated Plaintiffs' rights under the First Amendment to the United States Constitution, the Fourth Amendment to the United States Constitution, the First Amendment Assemblies Act, and the statutory and common law of the District of Columbia;

(b) ENTER JUDGMENT awarding Plaintiffs compensatory damages against all Defendants in an amount appropriate to the evidence adduced at trial;

(c) ENTER JUDGMENT awarding Plaintiffs punitive damages against all individual Defendants in an amount appropriate to the evidence adduced at trial;

(d) ENTER JUDGMENT against the FTCA Defendants pursuant to the Federal Tort Claims Act;

(e) ENTER JUDGMENT awarding Plaintiffs their costs and reasonable attorneys' fees in this action against the District of Columbia Defendants as provided in 42 U.S.C. §1988(b), and against the FTCA defendants as provided in the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(f) GRANT Plaintiffs such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully Submitted,
*/s/ Alfred Guillaume III*
Alfred Guillaume III (D.C. Bar No. MD0085)
Law Offices of Alfred Guillaume III, LLC
6305 Ivy Ln. Ste. 700
Greenbelt, MD 20770
Tel. 301-377-2158
Fax. 301-812-4254
ag3law@gmail.com

*/s/ Barry Coburn*
Barry Coburn (D.C. Bar No. 358020)
Marc Eisenstein (D.C. Bar No. 1007208)
Coburn and Greenbaum, PLLC
1710 Rhode Island Ave. NW
Washington D.C. 20036
Tel. 202-657-4490
Fax. 866-561-9712
barry@coburngreenbaum.com
marc@coburngreenbaum.com

*/s/ Nicholas G. Madiou*
Nicholas G. Madiou
(D.C. Bar No. MD0039)
Brennan, McKenna, Lawlor, Chtd.
6305 Ivy Ln. Ste. 700
Greenbelt, MD 20770
Tel. 301-474-0044
Fax. 301-474-5730

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this motion will be served upon all counsel of record via this Court's electronic filing service, this 22nd day of November, 2021.

In addition, we are serving Assistant United States Attorney Christopher Hair, Esq. via email.  Mr. Hair will be representing the United States in our action against it under the Federal Tort Claims Act, as well as the individual federal defendants in their official capacities.  Our understanding is that a decision has not yet been made as to who will represent the individual federal defendants in their individual capacities in connection with the Bivens claims against them.

/s/ Barry Coburn
_____